ROY RASMUSSEN, Plaintiff and Appellant, v. PAUL WAYNE SIBERT and VICTOR SIBERT, Defendants and Respondents.

No. 11529.
Submitted June 11, 1969.
Decided July 9, 1969.
456 P.2d 835.

M. G. McLatchy (argued), Missoula, Tipp, Hoven & Brault, Missoula, for appellant.

Garlington, Lohn & Robinson, Missoula, Sherman V. Lohn (argued), John R. McInnis (argued), Missoula, for respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

Plaintiff recovered judgment entered upon a jury verdict for $15,000 as a result of personal injuries sustained in an

automobile accident. From an order of the district court granting defendant a new trial, plaintiff appeals.

The accident in question occurred about 4:30 p.m. on August 3, 1966 on a county road west of Missoula leading from the Waldorf-Hoerner plant to U.S. Highway #10. Plaintiff Ray Rasmussen, an iron-worker employed by a contractor erecting a boiler building at the plant, was returning to Missoula after his day's work in his 1954 Chevrolet pickup. Plaintiff was slowing down preparatory to stopping in response to a flashing red light at the highway #10 intersection when his pickup was rear-ended by a vehicle driven by defendant Paul Sibert which was traveling in the same direction and behind plaintiff's pickup. The impact propelled plaintiff's pickup across highway #10 and into a plowed field beyond. The impact rendered plaintiff unconscious and he was taken to the emergency room of St. Patrick's hospital in Missoula where he was examined and treated by a physician.

Plaintiff's injuries can be generally characterized as concussion from a blow on the head and an injury to his lower back. The results of these injuries, according to plaintiff, have been intermittent and recurring violent headaches together with constant pain in his lower back of varying intensity. The seriousness of these injuries and their permanency is contested by defendant and the evidence thereon conflicting. The injury picture is otherwise clouded by plaintiff's congenital back condition and by a subsequent fall on the ice by plaintiff about five months after the accident in question.

Following the accident, defendant plead guilty to a charge of careless driving and paid a fine of $25.00.

In May, 1967, plaintiff filed the instant action against defendant and his father. Defendant's answer, in substance, was a general denial. The case came on for jury trial in the district court of Missoula County on May 20, 1968. During the course of trial, at plaintiff's request, defendant's father was dismissed as a party defendant.

During the course of trial plaintiff was being questioned on redirect examination by his own counsel concerning the value of his pickup. The following colloquy occurred:

"Q. Now Mr. Jones likewise inquired about the value that you set on the car of $500.00, Roy. Did you make any investigation as to the value of your car in 1966 after the accident? A. Yes, sir.

"Q. What did you do, Roy? A. I was told by their insurance—

"Q. Don't tell me what anyone told you or anything of that sort. What did you do, Roy? A. Well, to start my story I have to say that I was told—

"THE COURT: Now just a moment! Mr. Hoven told you before we don't want any statements as to what anyone may have told you. That is hearsay and it is not admissible, so you just answer the questions without repeating what anyone may have told you. A. I went out to look for a truck to replace the one that I had. I shopped around and trying for the same model and same year. At that time, I couldn't find any. There was newer models and old models. I looked in the newspapers for years of them and, at that time, the differences in prices and quality of the truck that I was looking at to compare with my own, that's where I arrived at $500.00.

Some 26 questions and answers later, a recess was taken at which time court and counsel had a discussion concerning what the witness had said about insurance and its audibility to the jury. There apparently was some question as to whether plaintiff had actually said "their insurance" and if so, whether the jury heard it. The court reporter's notes were checked at that time which showed the plaintiff did use these words. At that time, the presiding judge was of the opinion that the jury did not hear these words.

In his instructions to the jury, the judge, in effect, directed a verdict against the defendant on the issue of liability and submitted the issues of injuries and damages to the jury. The

jury returned a 10-2 verdict for plaintiff in the amount of $15,000 and judgment was entered thereon.

Subsequently, defendant moved for a new trial on grounds set forth in section 93-5603, subds. 1, 2, 5 and 7, R.C.M.1947, which can be summarized as follows: (1) Irregularity in the proceedings by which defendant was prevented from having a fair trial; (2) Misconduct of the jury; (3) Excessive damages appearing to have been given under the influence of passion and prejudice; (4) Error in law duly excepted to by defendant.

This motion was made upon the minutes of the court and upon supporting affidavits of six of the trial jurors.

The supporting affidavit of the jury foreman stated (1) that plaintiff mentioned that defendant's insurance man had communicated something to him, (2) that she mentioned during discussion in the jury room the fact that plaintiff knew there was insurance involved, ((3) that some of the jurors said they heard about insurance during the trial and some said they did not, (4) that she assumed during the deliberations that defendant was insured and to that extent it affected her verdict, and (5) that she thought that all others on the jury assumed there was insurance and to that extent it affected their verdict.

The other supporting affidavit was signed by five other jurors. These jurors stated therein (1) that the jury foreman's affidavit was correct, (2) that because of the jury foreman's statement in the jury room that plaintiff mentioned something about defendant's insurance man, they assumed defendant had insurance and this materially affected their verdict.

The district court granted defendant a new trial. Although the order itself does not specify the grounds, the trial judge's memorandum attached to the order makes it clear that the basis was that the defendant was denied a fair trial in that the court at the time thought that the jurors had not heard plaintiff's reference to insurance which the subsequent affi-

davits of the jurors proved not to be the case. The memorandum concludes "The court finds no merit on the other grounds of the Defendant's motion."

Plaintiff now appeals from the order of the district court granting defendant a new trial. The issues for review upon this appeal vary in number and content depending on whether plaintiff or defendant is stating them. In our view, the single basic issue is this: Did the district court err in granting defendant a new trial? Determinative of the answer to this question are three underlying issues: (1) the insurance issue, (2) the damage issue, and (3) exclusion of defendant's testimony relating to point of impact.

The thrust of plaintiff's argument on the insurance issue is that a single, unintentional, and nonresponsive answer by plaintiff referring to insurance is not prejudicial per se requiring a new trial. Plaintiff further argues that in any event, defendant waived this error by his failure to object, ask for an admonition, move for a mistrial, or request a corrective jury instruction, preferring to take his chances with the jury; as a consequence, defendant is estopped from using this ground as a basis for a new trial after an adverse jury verdict. Finally, plaintiff contends that juror affidavits cannot be used to impeach the jury verdict in this case because no jury misconduct was involved.

On the other hand, defendant argues that the reference to insurance was injected into the case by plaintiff himself and that its prejudicial effect on the defendant and the verdict against him stands uncontradicted by the affidavits of six jurors. Defendant further contends that under the unusual circumstances involved in this case where both the court and counsel doubted that the jury had heard the reference to insurance, defendant was not required to request corrective action for to do so would not only have been a useless act but would in itself have injected the insurance issue in the minds of the jurors where none existed before. In any

event, according to defendant, no manifest abuse of discretion by the trial court in granting a new trial is shown under these circumstances. Finally, defendant justifies the use of juror affidavits to prove the true facts because it was the only method available to him, it was not a frivolous or recurrent invasion of the right of the jury to deliberate iin privacy uncontaminated by the threat of subsequent public exposure of their deliberations, and in any event the value of a fair and impartial trial in our judicial system outweighs the value of privacy in jury deliberations.

Initially we observe that it cannot be determined with certainty whether the district court's order granting a new trial was based on subd. 1 or subd. 2 of section 93-5603, R.C.M.1947. In our view subd. 2 authorizing a new trial in case of misconduct of the jury is clearly inapplicable in the instant case. Here there was no misconduct of the jury—plaintiff referred to "their insurance" in his testimony at the trial, this reference was brought to the juror's attention by the foreman in the jury room, some of the jurors assumed that the defendant had insurance, and to that extent it materially affected their verdict. The jury had not been instructed or admonished to disregard this testimony, nor was there any reason for the jury to believe they should do so. On this basis the instant case is clearly distinguishable from cases involving jury misconduct (1) in considering matters outside the evidence produced at the trial, such as the results of an independent investigation by a juror at the scene of an accident (Goff v. Kinzle, 148 Mont. 61, 417 P.2d 105) or a juror's use of a newspaper cartoon during jury deliberations (State Highway Comm'n v. Manry, 143 Mont. 382, 390 P.2d 97); and (2) cases involving a jury verdict induced by resorting to determination by chance, such as a quotient verdict (Benjamin v. Helena Light & Ry. Co., 79 Mont. 144, 255 P. 20, 52 A.L.R. 33).

Section 93-5603, subd. 1, authorizes a new trial where there has been irregularity in the proceedings of the court, jury or

adverse party by which either party was prevented from having a fair trial. Assuming, arguendo, that an irregularity occured here, it must additionally be shown that such irregularity materially affected the defendant's substantial rights by depriving him of a fair trial. Here this was attempted by defendant's counsel procuring affidavits from six jurors as heretofore set forth.

We hold that juror affidavits are not permissible in support of a motion for new trial under subd. 1 of section 93-5603; their use is confined exclusively to cases of misconduct of the jury under subd. 2 of that statute. Thus, in the instant case, because there was no jury misconduct under subd. 2 and because juror affidavits are impermissible under subd. 1, the district court should not have considered such juror affidavits for any purpose.

We base this holding, in part, on statutory language. Section 93-5603, R.C.M. 1947, sets forth the grounds on which a new trial may be granted. Only on the ground mentioned in subd. 2, i.e. juror misconduct, are juror affidavits authorized as proof. The following statute, section 93-5604, R.C.M.1947, provides that affidavits may be used in support of a motion for new trial under subd. 1 and that they must be used under subd. 2 and three other subdivisions. It is clear to us that the affidavits referred to therein, with the sole exception of juror affidavits specifically authorized under subd. 2 of section 93-5603, are affidavits of counsel, potential witnesses on retrial, court reporters, and others with knowledge of the facts on which the grounds for a new trial are based. Construed otherwise, juror affidavits would be permissible on 5 of the 8 grounds on which new trials are authorized.

We also base this holding on supporting Montana case law. Jurors will not be permitted to impeach their own verdict by affidavit subsequent to trial, except in the single case where their verdict has been reached by resort to chance; this single express exception excludes all other exceptions under the rule

"expressio unius est exclusio alterius". Sutton v. Lowry, 39 Mont. 462, 104 P. 545; Komposh v. Powers, 75 Mont. 493, 244 P. 298, aff'd 275 U.S. 504, 48 S.Ct. 156, 72 L.Ed. 396; Hough v. Shishkowsky, 99 Mont. 28, 43 P.2d 247; Schaff v. Shaules, 137 Mont. 357, 352 P.2d 265. In recent times this rule has been enlarged to permit the use of juror affidavits to prove any jury misconduct and irregularity by which a party is deprived of a fair trial, and not confined solely to that type of jury misconduct involving a verdict reached by resort to chance. Goff v. Kinzle, 148 Mont. 61, 417 P.2d 105. Thus any type of juror misconduct under subd. 2 of section 93-5603 may be proved by juror affidavit. But juror affidavits may not be used to impeach their verdict for any irregularity in the proceedings of the court, counsel, or jury under subd. 1, not amounting to jury misconduct under subd. 2.

The reasons for sharply restricting the use of juror's affidavits to impeach their verdict is succinctly stated in State v. Gies, 77 Mont. 62, 249 P. 573:

"The reasons for adhering strictly to the rule are obvious. If jurors were permitted to impeach their own verdicts the door would be thrown wide open to corrupt practices. After their discharge the jurors would be subjected to all sorts of tampering influences to induce them to repent of their decision and endeavor to change or revoke it by making affidavit to real or trumped-up irregularities. Thus there would be no assurance that any verdict, however just, would be final. [Citing authorities]".

We also hold that by his failure to object, ask for an admonition by the court to the jury to disregard plaintiff's testimony, move for a mistrial, or request a corrective jury instruction, defendant waived any objection he otherwise might have had to plaintiff's testimony and is estopped from raising this for the first time on motion for new trial. While counsel and the court may have oriiginally concluded that plaintiff was cut off before making the reference to insurance in his

testimony, all doubt was removed at the next recess when the court reporter's notes showed that plaintiff had in fact referred to "their insurance". To conclude that the jury did not hear this testimony that was heard and recorded by the court reporter is not only an unwarranted assumption, but would furnish an inexhaustible excuse for failure of counsel to timely object to any testimony given in any jury trial. Where testimony is heard and recorded by the court reporter, counsel must presume that it was heard by the jury.

Here there was no objection or motion to strike the testimony, no request for admonition by the court, no motion for mistrial, and no request for a corrective jury instruction. Briefly stated, defendant did nothing. In so doing defendant took a calculated risk. He knew the words had been uttered. He knew that no issue had been raised thereon. He knew that the jury had not been admonished or instructed to disregard this testimony; and he knew that his case was being submitted to the jury on this basis. Under these circumstances, defendant's failure to object or request corrective action constituted a waiver of objection on this issue. It cannot be urged for this first time upon motion for a new trial following an adverse jury verdict. Causey v. Cornelius, 164 Cal.App.2d 269, 330 P.2d 468; 56 A.L.R. 1491; 4 A.L.R.2d 820, 821; A.L.R.2d Later Case Service, Vol. 1 § 24, pages 423, 424. To hold otherwise would not only put the trial court in error on an issue which had not been presented to it for ruling, but would permit a litigant to submit his case to the jury for a possible verdict in his favor, and in the event he was unsuccessful, would permit him another determination by another jury.

For the foregoing reasons we hold that the granting of a new trial to defendant on the insurance issue constituted a manifest abuse of discretion warranting reversal.

But defendant next contends that nonetheless he is entitled to a new trial because the jury awarded excessive damages under

the influence of passion and prejudice. The district court denied defendant a new trial on this ground.

Reviewing the evidence as we must in the light most favorable to plaintiff we find that his injuries consisted of facial lacerations, a concussion of the head, and an injury to his lower back. The effects of these injuries were (1) intermittent and recurring violent headaches, (2) constant pain in his lower back of varying intensity, and (3) periods of dizziness. The periods of dizziness ceased sometime prior to trial and are no longer experienced, but the headaches and constant pain in his lower back are residual. According to his attending physicians, Dr. Hall, plaintiff still has an intervertebral disc syndrome in his lumbar spine but the prognosis on his injuries is very good if he will submit himself to treatment consisting of hospitalization in traction to alleviate or cure the disc syndrome consisting of numbness and pain in the back and down the leg. Two other physicians testified, one for plaintiff and one for defendant. Plaintiff's medical witness testified that plaintiff does not have a disc syndrome problem but has a sprain in the lower back superimposed upon a congenital abnormality of the spine. He testified that any hope of bending or lifting activity could be a problem with plaintiff's back and could very well be of an intermittent nature over a long period of time. Defendant's medical witness, Dr. Yost, said plaintiff has a low back sprain with impairment minimal in degree.

The jury verdict was for $15,000 of which $500 constituted damage to his pickup and approximately $750 of which constituted past medical expense. This amounts to a verdict of approximately $13,750 for general damages. There was no evidence of loss of future earnings or cost of future medical treatment. The evidence on general damages was confined to (1) past and future pain and suffering, and (2) interference with plaintiff's established course of life. The latter consisted of evidence tending to prove that plaintiff is required to sleep on a plywood board in his bed, is unable to sit for prolonged periods

of time, and has difficulty with any activity that requires bending, stooping or lifting.

The substance of defendant's argument is that the amount of the verdict is out of all proportion to the injuries received and therefore excessive; that the verdict was materially affected by injection of prejudicial matter, i. e., the reference to insurance heretofore noted; and that the amount of the award could only have come about through the influence of prejudice.

 It is axiomatic that there is no definite standard fixed by law in awarding damages for past or future mental and physical pain and suffering; all that is required is that the jury exercise calm and reasonable judgment in its award. The jury was so instructed by MJIG #30.01. Plaintiff is also entitled to recover, in the case of permanent injuries, a reasonable compensation for the destruction of his capacity to pursue an established course of life, see MJIG #30.06; Wilson v. Northland Greyhound Lines, Inc., D.C. 166 F. Supp. 667; Chavez v. United States, D.C. 192 F.Supp. 263; Risken v. Northern Pac. Ry. Co., 137 Mont. 57, 350 P.2d 831. The jury verdict is conclusive unless the amount awarded is so out of proportion to the injuries received as to shock the conscience. Parini v. Lanch, 148 Mont. 188, 418 P.2d 861; Simpson v. Miller, 97 Mont. 328, 34 P.2d 528; Kelley v. John R. Daily Co., 56 Mont. 63, 181 P. 326.

 Tested by the foregoing standards, we are unable to say that the verdict of $15,000 is so out of proportion to the injuries suffered as to shock the conscience and understanding. The district court did not so consider it and neither do we.

 Lastly, defendant contends that he is entitled to a new trial because of an error in law that occurred at the trial to which he excepted. The basis of this claim is the exclusion by the trial court of testimony by defendant and his father concerning their observations the morning following the accident of said skid marks, debris and other indicia of an accident 300-400 feet up the roadway, including skid marks corresponding to

the width of the tires of plaintiff's pickup, and their reconstruction of the accident showing that plaintiff's pickup skidded prior to the point of impact. An appropriate detailed offer of proof along this general line was made by defendant, objected to by plaintiff, and refused by the court.

The general rule relative to admissibility of evidence of tire marks on the highway is set forth in 23 A.L.R.2d 116:

"The general rule is that testimony as to tire marks on the highway is admissible in civil actions for injury or damage, where a sufficient foundation therefor is laid as by showing, for example, that the condition of the road was the same as it was at the time of the accident, and had not been changed by the weather or traffic, and there is sufficient identification that the marks were made by the automobile involved in the accident."

We have no quarrel with this general rule. But here the foundation was questionable in that the only identification of the skid marks were that they were of corresponding width to the tires on plaintiff's and defendant's vehicles as measured by defendant and his father. There was no showing that the tires on the two vehicles were other than standard tire widths found on many vehicles, no identification of the debris with either vehicle, no other evidence of any kind placing the accident in that location or indicating that plaintiff's pickup had skidded prior to impact. There was also no claim of negligence on the part of the plaintiff contained in either the pleadings or pretrial order. Under these circumstances the district court was correct in excluding the offered evidence.

Accordingly, the order of the district court granting defendant a new trial is reversed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, JOHN C. HARRISON and BONNER, concur.