No. 87-515

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

ROLAND AHMANN and NANCY AHMANN,

       Plaintiff and Appellant,

   -vs-

AMERICAN FEDERAL SAVINGS AND LOAN
ASSOCIATION,

       Defendant and Respondent.

_____

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Small, Hatch, Doubek & Pyfer; John C Doubek, Helena,
Montana

    For Respondent:

        Gough, Shanahan, Johnson & Waterman; Michael S.
Lattier, Helena, Montana

_____

Submitted on Briefs: Sept. 15, 1988

Decided:   December 16, 1988

Filed:

_____
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

The plaintiffs below, Roland and Nancy Ahmann, appeal a jury verdict in favor of the defendant, American Federal Savings and Loan Association, and an order of the District Court of the First Judicial District, Lewis and Clark County, denying their motions for mistrial, judgment notwithstanding the verdict and new trial. American Federal cross appeals. We affirm.

The Ahmanns raise the following issues on appeal:

1. Were there irregularities during the jury deliberations that materially affected the substantial rights of the plaintiffs such that they were denied a fair trial?

2. Did substantial evidence exist to support the jury verdict?

3. Did the District Court err by instructing the jury that American Federal's actions had to be "the" proximate cause of the plaintiffs' injuries?

4. Did the District Court err by instructing the jury that the plaintiffs' injuries must have been foreseeable from American Federal's conduct?

5. Did the District Court err by submitting the comparative negligence theory to the jury?

6. Did the District Court err by instructing the jury that plaintiffs had not made any claim that American Federal had breached its contract with them?

7. Did the District Court err by instructing the jury that a party may waive the benefit of a contract when, in another jury instruction, the trial court instructed that the action was not based upon contract?

8. Did the District Court err by allowing testimony of the plaintiffs' net worth?

American Federal, on cross appeal, raises the following issues:

1. Did the District Court erroneously instruct the jury on the definition of bad faith?

2. Did the District Court err by refusing to instruct the jury on comparative bad faith?

In 1985, Dave Bird, a Helena contractor, approached Roland Ahmann about the possibility of constructing a house for profit. Ahmann, a real estate broker and part owner of a Helena real estate agency, agreed to employ Bird to build a house on land he owned located along the south hills of Helena. The Ahmanns planned to put both the new house and the home they already owned on the market. Whichever house did not sell would be kept as the family residence. Any profits from the sale of the south hills home would be split with the contractor Bird.

Bird drew up specifications for the house and Ahmann submitted them to American Federal Savings and Loan as part of the application process for a home construction loan. American Federal approved a $120,000 loan on September 5, 1985.

The construction loan was disbursed by the "direct pay" method. Bills incurred in construction would be approved by Ahmann. After approval, the bills would be submitted to American Federal. American Federal would then draft checks to cover the bills. The checks would be made out to either Bird, Ahmann or the creditor. On occasion, Bird would bypass Ahmann and take the bills directly to American Federal. In those instances, American Federal would call Ahmann for his approval.

Construction on the house commenced prior to the approval of the loan by American Federal. On August 13, 1985, Ahmann wrote a draft on his American Federal checking

- 3 -

account to pay a $7,000 bill for concrete work completed during this time. The check was made payable to Berrigan Construction. Ahmann gave the check to Bird to deliver to Berrigan. Instead, Bird forged Berrigan's endorsement and cashed the check at American Federal. The forgery was not discovered until late November or early December, 1985.

Unfortunately, the Berrigan forgery was not the only instance of Bird's dishonesty. There were three other occasions when construction loan disbursements did not reach their intended creditors. These conversions took place about the same time the Berrigan forgery was discovered.

As a result of Bird's forgeries and conversion of funds, liens were placed on the new home, the Ahmanns were forced to expend funds over and above the original cost estimate, and the house was finally sold at a loss. In addition, Ahmann was never repaid a $14,000 personal loan he made to Bird.

In April, 1986, Roland and Nancy Ahmann filed a complaint against American Federal, alleging that the savings and loan acted negligently and in bad faith in cashing the Berrigan check. The Ahmanns claimed that, had American Federal informed them of the Berrigan forgery, they would not have proceeded with the loan application nor would they have retained Bird as general contractor in the construction of the south hills home. They also claimed that they would not have made the personal loan of $14,000 to Bird if they been informed of the forgery.

In addition, the Ahmanns alleged that American Federal acted negligently and in bad faith in the handling of the construction loan. They claimed that American Federal breached its duty to them by failing to conduct inspections of the building project, improperly distributing the loan monies and failing to obtain lien waivers.

The Ahmanns also claimed that they were slandered by an employee of American Federal. The District Court directed a verdict in favor of American Federal on this issue.

A four-day trial was held from August 31 through September 4, 1986. The 12-person jury found in favor of the defendant, American Federal. The Ahmanns moved for a mistrial, new trial and judgment notwithstanding the verdict. The District Court denied the motions. The Ahmanns filed this appeal. American Federal filed a cross-appeal.

I.

The Ahmanns first contend that their motions for new trial and mistrial should have been granted in light of alleged irregularities in the jury proceedings. To support their motions in the District Court, the Ahmanns submitted an affidavit of one of the jurors. In the affidavit, the juror alleged that, during deliberations, the jury members were confused about the issue of proximate cause. The juror also testified that when she asked the bailiff whether the jurors could talk to the judge about their questions, she was informed that they could only communicate with the court in writing. The juror further testified that the bailiff told her that the judge probably would not consider the jury's questions until the next day or after the trial was completed.

To refute the alleged irregularities, American Federal filed an affidavit of the bailiff. In her affidavit, the bailiff denied that she told the juror that the judge would not consider any questions until the next day or until the end of the trial.

Montana law allows a new trial if an irregularity exists in the proceedings of the court or jury that materially affects the substantial rights of the aggrieved party. Section 25-11-102(1), MCA. The Ahmanns contend that the

alleged statements of the bailiff constitute an irregularity in the proceedings which denied them a fair trial. They argue that the bailiff's remarks misled the jury, preventing clarification of the proximate cause issue.

It has long been the rule that juror affidavits that delve into the thought processes of the jury are inadmissible to support the granting of a new trial. Rule 606(b), M.R.Evid.; State Bank of Townsend v. Maryann's, Inc. (1983), 204 Mont. 21, 29, 664 P.2d 295, 299. Thus, the affidavit presented in this case was not properly submitted to show jury confusion over the issue of proximate cause. Charlie v. Foos (1972), 160 Mont. 403, 409, 503 P.2d 538, 541.

The question arises, however, whether the juror's affidavit was admissible to show an irregularity in the jury proceedings occasioned by the bailiff's alleged remark that the judge would not immediately entertain questions. In Rasmussen v. Sibert (1969), 153 Mont. 286, 293, 456 P.2d 835, 839, we held that juror affidavits were inadmissible to show irregularities in the proceedings under subsection (1) of the statute governing grounds for new trial, § 25-11-102, MCA.

Rasmussen, however, may be distinguished from the present case. In Rasmussen, affidavits were submitted to support a motion for new trial based on alleged irregularities in the court proceedings. The affidavits were introduced to show that testimony regarding the defendant's ownership of insurance was heard by the jury and affected the outcome of the verdict. We stated that affidavits of counsel, court personnel and potential witnesses on retrial were permissible, but that affidavits of jurors were not. Rasmussen, 153 Mont. at 293, 456 P.2d at 839.

The instant case may be distinguished from Rasmussen in two ways. First, in Rasmussen, the affidavits contained references only to the thought processes of jurors. The

juror affidavit in the present case, however, contains not only statements regarding the inner workings of the minds of the jurors, it also contains an allegation of an inappropriate statement by the bailiff. The bailiff's alleged remark may be considered an outside influence that may have prevented the jury from seeking clarification of legal issues. Rule 606(b), M.R.Evid., allows evidence of outside influence of the jury.

Second, in Rasmussen, the alleged irregularities occurred in the courtroom in the presence of the judge, court reporter and counsel. Juror affidavits were not needed to show the fact of an irregularity in the proceedings. The only purpose served by the introduction of the Rasmussen affidavits was to show that the jury indeed heard the testimony regarding defendant's insurance and that the jurors considered that testimony during their deliberations.

In contrast, only the affiant juror and the bailiff were privy to the alleged conversation in the instant case. Only those two individuals have personal knowledge of what was said. It would be irrational to hold, as American Federal urges, that the bailiff's affidavit is admissible while the juror's is not. To the contrary, we hold that juror affidavits are admissible to show grounds upon which a new trial may be granted when the juror has personal knowledge of an alleged irregularity in the proceedings and the only other individual who has personal knowledge of the facts surrounding the irregularity is the individual who committed the alleged infraction.

We emphasize that only the facts upon which the alleged irregularities are based are admissible. Any allegations regarding the inner workings of the jury deliberations are inadmissible. We will not approve future attempts to combine

allegations of fact with allegations of juror thought processes.

Although we find that portions of the juror affidavit were admissible, we do not hold that the District Court erred in its denial of the Ahmanns' motions for new trial or mistrial. We will not disturb the District Court's failure to grant a new trial or mistrial unless the evidence is clear and convincing that the trial court erred. Easterday v. Canty (Mont. 1986), 712 P.2d 1305, 1307, 43 St.Rep. 60, 63; Schmoyer v. Bourdeau (1966), 148 Mont. 340, 343, 420 P.2d 316, 317-18.

The evidence is not clear and convincing that the District Court erred in its decision to deny the Ahmanns' motions. Even if the bailiff did tell the juror that the judge would not consider questions until the next day or after trial, a fact which the bailiff denies, the rights of the plaintiffs were not substantially affected. The bailiff did not prevent the jurors from asking questions of the judge. She did not refuse to bring them back into court or to deliver questions to the judge. Any influence the alleged remark may have had on the jury did not affect the rights of the Ahmanns. We affirm the District Court on this issue.

II.

Next, the Ahmanns contend that the evidence presented at trial is insufficient to support the jury verdict in favor of American Federal. We do not agree.

When examining a claim of insufficient evidence, this Court will not reweigh the evidence. It is the province of the jury to determine the weight and credibility of the proof presented. Our job at the appellate level is simply to determine, by reviewing the facts in the light most favorable to the party in the action below, whether the verdict is supported by substantial credible evidence. Weinberg v.

Farmers State Bank of Worden (Mont. 1988), 752 P.2d 719, 721-22, 730, 45 St.Rep. 391, 392, 404-05.

The Ahmanns' first cause of action charged that American Federal acted negligently and in bad faith by cashing the $7,000 check on which Dave Bird had forged the endorsement of the payee, Berrigan Construction. The jury found that the Berrigan check had been paid in full by Bird and that neither American Federal's actions in cashing the check nor its checking account practices proximately caused any of the additional damages claimed by the Ahmanns.

American Federal acknowledged that it improperly cashed the Berrigan check. Montana law provides that a financial institution that negligently handles a negotiable instrument is liable for the face amount of the instrument. The applicable statute reads as follows:

> The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence.

Section 30-4-103(5), MCA.

American Federal would have been liable for the entire $7,000 had it not been repaid by Dave Bird. Testimony adduced at trial and exhibits introduced into evidence showed that Bird did in fact repay the $7,000. Although American Federal had negligently handled the draft, substantial credible evidence exists by which the jury could determine that the savings and loan was not liable for any of the $7,000 because, due to Bird's repayment of the funds, the Ahmanns did not suffer a loss.

In order to hold American Federal liable for any amount beyond the face value of the check, the Ahmanns were required

to show that the savings and loan acted in bad faith and that its actions proximately caused the damages claimed by the Ahmanns. Section 30-4-103(5), MCA. The jury found that American Federal's handling of the check did not proximately cause the Ahmanns' damages. It did not reach the question of bad faith. Therefore, we need only determine whether substantial credible evidence exists to support the jury's finding of lack of proximate cause.

The premise of the Ahmanns' claim appears to be that American Federal's failure to discover and inform them of the Berrigan forgery proximately caused economic, emotional and physical damages. They argued that, if they had known of the forgery, they would not have continued to employ Bird as their contractor, nor would they have made him a personal loan of $14,000.

Substantial credible evidence exists by which the jury could reject these claims. The teller who cashed the check testified that Bird presented her with the draft with Bill Berrigan's endorsement. Bird explained that Berrigan had asked him to cash the check in order to pay some of Berrigan's creditors. The teller believed Bird's story and, although she refused to give him cash, issued four cashier's checks to the purported creditors. The cashier's checks listed Berrigan as remitter.

The teller did not suspect that the Berrigan endorsement was a forgery, nor did anyone else at American Federal. Therefore, an investigation of the endorsement by American Federal did not take place. Three months later, the concrete supplier who was to have been paid from the proceeds of the Berrigan check contacted Roland Ahmann to demand payment. When Ahmann asserted that he had already paid him, the supplier took the cancelled check to Berrigan. Berrigan denied the endorsement was his.

Ahmann then checked with American Federal's customer service department. He did not, however, indicate that he believed that the check had been forged. He instead told customer service that he wanted to trace the money. American Federal researched the matter and informed Ahmann that the check had been cashed and four cashier's checks had been issued. Ahmann said he would take care of the matter from that point.

At no time did Ahmann inform American Federal's customer service or loan departments that he suspected that the draft had been forged. Furthermore, even after learning of the forgery, Ahmann continued to do business with Bird and continued to authorize Bird's requests. These facts constitute substantial evidence upon which the jury could have determined that American Federal was not responsible for the damages incurred by the Ahmanns.

The record also indicates that American Federal's failure to inform the Ahmanns of the forgery might not have prevented the $14,000 personal loan. Bird's request for such a loan should have alerted the Ahmanns that their contractor's credit was not good. The Ahmanns made the loan anyway. When the loan came due in November, 1985, Bird attempted to repay it with a personal check on an account with insufficient funds. Ahmann refused to take the check. Bird assured him he would pay the money shortly. He never did.

Although Bird did not repay the loan, Ahmann continued to do business with him. He retained Bird's services as general contractor. He continued to approve bills allegedly incurred in the course of construction. Substantial evidence exists to indicate that Ahmann himself, rather than American Federal, proximately caused his own damages.

The Ahmanns' second cause of action charged that American Federal acted negligently and in bad faith in overseeing the construction loan. The Ahmanns claimed that American Federal's acts and omissions proximately caused cost overruns in the construction of the house, as well as liens to be placed on the building, forcing them to sell the uncompleted project at a loss. They further claimed that American Federal's actions caused a disruption in Roland Ahmann's business, resulting in a loss of income and profits. In addition, the Ahmanns alleged that American Federal's miscarriage of its duties in overseeing the loan caused the Ahmanns considerable emotional and physical distress. The jury, however, did not find in accordance with the Ahmanns' claims. The 12-person panel found that American Federal's supervision of the construction loan did not proximately cause the alleged injuries.

Viewed in the light most favorable to American Federal, substantial evidence exists to support the jury verdict. While the record shows that American Federal's handling of the loan did not proceed smoothly at all times, the Ahmanns failed to show that American Federal's actions caused their damages. Moreover, the record reveals that Ahmann himself had a hand in the confusion surrounding the loan disbursements by failing to inform the loan officer of the Berrigan forgery and neglecting to reveal that Bird had directly paid him $3,000 of the converted funds, money Ahmann knew came from the construction loan.

Furthermore, substantial evidence supports American Federal's theory that the real cause of the Ahmanns' damages was the unrealistically low cost estimate for the building project. Bird's estimate of the cost to complete the house was $122,800, yet the appraisal completed in order to have a construction loan approved indicated a construction cost of

$166,000. Ahmann took no other bids for the project. He instead relied on Bird, believing that Bird could complete the job cheaply.

Unfortunately, the project ended up costing more than the Ahmanns had anticipated. The Ahmanns, however, failed to prove that American Federal caused these cost overruns or any other damages. We hold that substantial evidence supported the jury's verdict that American Federal's supervision of the construction loan did not proximately cause the damages suffered by the Ahmanns.

### III.

The Ahmanns raise several arguments regarding jury instructions. They first maintain that the trial court erred in submitting the following instruction to the jury:

> Before you reach the issue of whether defendant's conduct was negligent, you must determine and decide first whether defendant's conduct was <u>the</u> proximate cause of any injuries which plaintiffs may have suffered. If you find that defendant's conduct was not <u>the</u> proximate cause of any injuries suffered by plaintiffs, you may not find defendant negligent. (Emphasis added.)

The Ahmanns argue that the presence of the article "the" before the words "proximate cause" improperly required the jurors to find that American Federal was the sole cause of their injuries.

We need not consider the merits of the Ahmanns' contention as their argument is raised for the first time on appeal. During the settlement of instructions, the Ahmanns did indeed object to the above instruction. Their objection, however, was premised on the instruction's redundancy. There was no objection made to the instruction's wording.

Rule 51, M.R.Civ.P., in pertinent part provides:

> Objections made [to proposed instructions] shall specify and state the particular grounds on which

- 13 -

the instruction is objected to and it shall not be sufficient in stating the ground of such objection to state generally the instruction does not state the law or is against the law, <u>but such ground of objection shall specify particularly wherein the instruction is insufficient or does not state the law, or what particular clause therein is objected to.</u> (Emphasis added.)

We will not consider a challenge to an instruction based upon a reason that was not raised in the court below. Reno v. Erickstein (1984), 209 Mont. 36, 46, 679 P.2d 1204, 1209.

## IV.

The Ahmanns' second claim of error in the jury instructions centers on the instruction regarding foreseeability. The Ahmanns argue on appeal that this instruction was improper because 1) the words "proximate cause" were once again preceded by the article "the;" and 2) an instruction on foreseeability in an action of this kind is improper.

As with the preceding instruction, the Ahmanns' argument regarding the presence of the article "the" is raised for the first time on appeal. Hence, this argument is not properly before the Court and we need not examine it further.

In the District Court, the Ahmanns objected to the proposed instruction on the grounds that foreseeability was not an element of their cause of action. After the objection, the court modified the instruction. The Ahmanns, however, did not renew their objection. By failing to object to the modified instruction, the Ahmanns did not properly preserve their objection for appeal. Therefore, we need not discuss the merits of their claim.

## V.

The Ahmanns also contend that the District Court erred in submitting an instruction on comparative negligence to the

jury.   They argue that comparative negligence is irrelevant when one party stands as a fiduciary to another.

The Ahmanns confuse legal theories. In their complaint and pre-trial order, they alleged that American Federal negligently, recklessly and in bad faith breached its obligations to them.   They did not claim any breach of fiduciary duty.   At trial, they made some attempt to show the existence of a fiduciary relationship.   However, no instructions regarding fiduciaries were submitted to the jury, nor did the special interrogatories in the jury verdict refer to a fiduciary duty.   The Ahmanns do not appeal the omission of such instructions or interrogatories.

Under the circumstances, we cannot find that the breach of a fiduciary duty was a claim in the present case. Therefore, we need not discuss whether the issue of comparative negligence may properly be submitted to the jury when a plaintiff bases his claims both on negligence and breach of fiduciary duty.

## VI.

The Ahmanns next maintain that the District Court erred in instructing the jury that the plaintiffs had not made any claim that American Federal breached its contract with them. The instruction of which the Ahmanns complain reads as follows:

> Plaintiffs have not made any claim that defendant breached its contract with them.  Plaintiffs have based their case against defendant on the legal theories of negligence, gross negligence, and bad faith.  Therefore, you may not award any damages for breach of contract in this action.

The Ahmanns argue that the instruction improperly misled the jury into believing that it could not refer to the parties' construction contract to determine whether there was a basis upon which tort liability could be imposed.

We do not agree with the Ahmanns' contention. The instruction at issue was submitted in an attempt to clarify the fact that, because the Ahmanns based their claims solely on tort theories, damages could not be awarded for breach of contract. The instruction in no way prevented the jury from considering whether American Federal's deviations from the written contract, if any, constituted negligence or bad faith. The District Court did not err in issuing this instruction to the jury.

### VII.

In their final argument regarding jury instructions, the Ahmanns contend that the District Court's instruction regarding waiver of contract benefits served only to confuse the jury. They argue that, in light of the instruction on breach of contract, an instruction regarding waiver of contract benefits was improper.

Once again, we will not examine the merits of the Ahmanns' arguments. During the settlement of jury instructions the Ahmanns objected to the proffered instruction, contending that there was no evidence of waiver. They did not argue that the instruction was confusing. Because their objection on appeal differs from their objection in the court below, we will not consider this issue further. Rule 51, M.R.Civ.P.

### VIII.

The Ahmanns argue that the introduction of evidence of their net worth was impermissible. They assert that the highly prejudicial nature of this information outweighed its probative value, and, therefore, should not have been allowed into evidence in accordance with Rule 403, M.R.Evid.

The admissibility of evidence is largely within the discretion of the district court. We will review a question

of admissibility only in a case of manifest abuse. Cech v. State (1979), 184 Mont. 522, 531-32, 604 P.2d 97, 102.

In the instant case, the Ahmanns sought considerable damages for emotional distress. They claimed that the actions of American Federal caused them financial hardship, leading to the deterioration of Roland Ahmann's well being. The introduction of evidence regarding net worth was admitted to show the effect of the financial loss on Roland Ahmann's state of mind. The trial court did not abuse its discretion in allowing this evidence.

## IX.

On cross appeal, American Federal raises issues regarding jury instructions on bad faith. Because we affirm the jury verdict in the District Court, there is no need to discuss American Federal's contentions.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices