NO. 95-389

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA, ex rel. STATE
COMPENSATION MUTUAL INSURANCE FUND,

    Plaintiff and Respondent/Cross-Appellant,

    v.

GEORGE BERG, d/h/a BERG LUMBER CO.,
and BERG LUMBER, INC.,

    Defendants and Appellants/Cross-Respondents.

FILED

4 1996

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Tenth Judicial District,
               In and for the County of Fergus,
               The Honorable John R. Christensen, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

            Robert J. Emmons; Emmons & Sullivan, Great
            Falls, Montana

        For Respondent:

            Laurence A. Hubbard; State Compensation Mutual
            Insurance Fund, Helena, Montana

            Robert James; James, Gray & McCafferty,
            Great Falls, Montana


                            Submitted on Briefs:   July 18, 1996

                                      Decided:   November 14, 1996

Filed:

Justice Karla M. Gray delivered the Opinion of the Court.

George Berg, d/b/a Berg Lumber Co. and Berg Lumber, Inc. (Berg) appeals from the denial by the Tenth Judicial District Court, Fergus County, of his motions for a new trial and to vacate the judgment and enter judgment in his favor. The State of Montana, ex rel. State Compensation Mutual Insurance Fund (State Fund), cross-appeals from the judgment entered by the District Court and, in particular, from its order denying the State Fund's motion for a directed verdict. We affirm on the appeal, reverse on the cross-appeal and remand.

We restate the issues on appeal and cross-appeal as follows:

1. Did the District Court abuse its discretion in denying Berg's motion for a new trial which was based on juror misconduct?

2. Did the District Court abuse its discretion in denying Berg's motion for a new trial which was based on failure to instruct the jury on the definition of "misrepresent?"

3. Did the District Court abuse its discretion in denying Berg's motion to vacate the judgment and enter judgment in his favor which was based on the State Fund's failure to plead constructive fraud with sufficient particularity?

4. Did the District Court abuse its discretion in denying Berg's motion to vacate the judgment and enter judgment in his favor which was based on a statute of limitations bar to the constructive fraud claim?

5. Did the District Court err in denying the State Fund's motion for a directed verdict which was based on the existence of a disputable presumption of employee status?

FACTUAL AND PROCEDURAL BACKGROUND

Berg owns and operates a lumberyard, sawmill and planing operation in Lewistown, Montana. Montana law requires him to provide workers' compensation insurance and unemployment insurance

for his employees. Berg's workers' compensation insurance through the State Fund authorized the State Fund to examine and audit Berg's payroll records, general ledger, disbursements, vouchers, contracts, tax reports and all other books, documents and records at any reasonable time.

In February of 1989, the Unemployment Insurance Division of the Montana Department of Labor and Industry (Department) requested an audit of Berg's operations as a result of an unemployment insurance benefits claim filed by Tim Murnion (Murnion). Murnion claimed to have been employed by Berg, but no wage credits based on employment by Berg were on file with the Unemployment Insurance Division. Mike Knecht (Knecht), a Department field representative, was assigned to conduct an unemployment insurance audit of Berg's operations for the January 1, 1987, through December 31, 1988, period and a workers' compensation audit of those operations for the July 1, 1987, through September 30, 1988, period. The workers' compensation audit period was subsequently extended to December 31, 1988. Between the beginning of Knecht's audit of Berg's operations on February 22, 1989, and December of 1990, when he conducted a physical inspection of Berg's operations, Knecht visited the sawmill six or seven times.

Based on the results of Knecht's audit, the State Fund sued Berg in Lewis and Clark County on January 17, 1992. It alleged that Berg did not properly remit workers' compensation insurance premiums in that he (1) failed to make payments for individuals improperly treated as independent contractors rather than

3

employees; (2) underreported employees' wages ; and (3) misclassified employees' wages. Berg moved for a change of venue to Fergus County and the motion was granted. In March of 1993, the State Fund moved to amend its complaint to add actual and constructive fraud claims and the District Court granted the motion over Berg's objections. Berg answered the amended complaint by generally denying the State Fund's allegations and asserting the statute of limitations and estoppel as affirmative defenses. The parties conducted discovery and filed numerous pretrial motions. The District Court ruled on the motions and entered a pretrial order prepared by trial counsel for both parties.

After several trial dates were scheduled and vacated, a jury trial began on June 27, 1994, in Lewistown, Montana. The State Fund moved for a mistrial and change of venue, contending that it could not yet a fair trial in Fergus County. The District Court declared a mistrial, but denied the State Fund's motion for change of venue.

The second trial began on June 6, 1995. At the conclusion of the State Fund's case-in-chief, the District Court granted its motion for a directed verdict on Berg's liability for workers' compensation premiums for the first quarter of 1991 in the amount of $13,333.49. At the end of the trial, the State Fund moved for a directed verdict on the employee status of certain individuals Berg claimed were independent contractors. The State Fund argued that Berg had presented insufficient evidence to rebut the

4

presumption of employee status for the question to go to the jury. The District Court denied the motion.

The jury ultimately returned a special verdict finding that Berg committed constructive fraud in dealing with the State Fund and misrepresented payroll, employee status and employee duties by misclassifying his employees. The jury awarded $305,857.46 in damages to the State Fund. The District Court added the $13,333.49 directed verdict amount to the jury's award and entered judgment for the State Fund for $319,190.95.

Berg obtained new counsel and moved for a new trial and to vacate the judgment and enter judgment in his favor. He premised the new trial motion on alleged juror misconduct and instructional error. His motion to vacate the judgment and enter judgment in his favor was based on the State Fund's alleged failure to plead constructive fraud with sufficient particularity and a statute of limitations bar to the constructive fraud claim. The District Court denied Berg's motions.

Berg appeals from the denial of his postjudgment motions and the State Fund cross-appeals from the District Court's denial of its motion for a directed verdict. Additional facts are provided below as necessary for our resolution of the issues before us.

DISCUSSION

1. Did the District Court abuse its discretion in denying Berg's motion for a new trial which was based on juror misconduct?

Berg contended in his new trial motion that juror misconduct by juror James Carroll (Carroll) constituted irregularity in the

proceedings of the jury. He supported his motion with an affidavit from juror Robert Flinders (Flinders). According to Flinders, Carroll said to him, on several occasions during the trial, "That's it; [t]hat's all I need to hear; [i]t's all over." Flinders also stated that Carroll pointed to another juror during several recesses and said, "That's one we'll have to convince." Flinders either ignored Carroll's statements or told Carroll to be quiet.

In denying Berg's new trial motion, the District Court concluded that Carroll's conduct was not an external influence on the jury but was, if anything, an internal influence for which a juror affidavit could not be used to impeach the verdict. The court determined, therefore, that Flinders' description of Carroll's conduct did not provide a basis on which it could grant a new trial.

We review a district court's denial of a motion for a new trial to determine whether the district court abused its discretion. State v. Kelman (Mont. 1996), 915 P.2d 854, 859, 53 St.Rep. 372, 375; State v. Brogan (1995), 272 Mont. 156, 160, 900 P.2d 284, 286. Whether certain conduct is an internal or external influence on the jury is a question of law, however. See Geiger v. Sherrodd, Inc. (1993), 262 Mont. 505, 510, 866 P.2d 1106, 1109. We review a district court's conclusions of law to determine whether they are correct. Topco, Inc. v. State Dept. of Highways (1996), 275 Mont. 352, 357, 912 P.2d 805, 808.

The grounds on which a new trial may be granted are statutorily defined in Montana. Section 25-11-102, MCA, provides in relevant part:

> The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
> (1) irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;
> (2) misconduct of the jury. Whenever any one or more of the jurors have been induced to assent to any general or special verdict or to a finding on any question submitted to them by the court by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors.

Motions for a new trial based on irregularity in the proceedings of the jury under § 25-11-102(1), MCA, may be made "on affidavits or on the minutes of the court;" new trial motions based on jury misconduct under § 25-11-102(2), MCA, must be made "only on affidavits." Section 25-11-104, MCA.

At the outset, we note the District Court's observation--in its order denying Berg's motion for a new trial based on Flinders' affidavit--that it was difficult to determine whether Berg was proceeding under subsection (1) or (2) of § 25-11-102, MCA. It is no more apparent to us on appeal. Therefore, we will address Berg's reliance on the Flinders affidavit under both subsections.

### Section 25-11-102(1), MCA

Berg contends that Flinders' affidavit relating the "prejudgment remarks" Carroll made to him indicates Carroll's disregard of the District Court's daily admonitions to the jury not to discuss the case among themselves. According to Berg, that

7

conduct constitutes an irregularity in the jury proceedings which prevented him from having a fair trial and entitles him to a new trial under § 25-11-102(1), MCA.

As a general rule, the use of juror affidavits is confined exclusively to cases alleging misconduct of the jury under § 25-11-102(2), MCA. Rieger v. Coldwell (1992), 254 Mont. 507, 512, 839 P.2d 1257, 1260 (citing Rasmussen v. Sibert (1969), 153 Mont. 286, 293, 456 P.2d 835, 839). In Rasmussen, we held:

> [J]uror affidavits are not permissible in support of a motion for new trial under subd. 1 of section 93-5603 [now § 25-11-102, MCA]; their use is confined exclusively to cases of misconduct of the jury under subd. 2 of that statute. . .
> We base this holding, in part, on statutory language. Section 93-5603, R.C.M. 1947 [now § 25-11-102, MCA], sets forth the grounds on which a new trial may be granted. Only on the ground mentioned in subd. 2, i.e. juror misconduct, are juror affidavits authorized as proof. The following statute, section 93-5604, R.C.M. 1947 [now § 25-11-104, MCA], provides that affidavits may be used in support of a motion for new trial under subd. 1 and that they must be used under subd. 2 and three other subdivisions. It is clear to us that the affidavits referred to therein, with the sole exception of juror affidavits specifically authorized under subd. 2 of section 93-5603 [now § 25-11-102, MCA], are affidavits of counsel, potential witnesses on retrial, court reporters, and others with knowledge of the facts on which the grounds for a new trial are based. .

Rasmussen, 456 P.2d at 839 (emphasis added).

Berg contends, however, that Ahmann v. American Fed. Sav. & Loan Ass'n (1988), 235 Mont. 184, 766 P.2d 853, allows consideration of the Flinders affidavit in support of his § 25-11-102(1), MCA, new trial motion. In Ahmann, the alleged irregularity in the proceedings did not involve alleged juror misconduct; rather it concerned conduct of a bailiff in a conversation with one of the

8

jurors  *Ahmann*, 766 P.2d at 856.  We noted our *Rasmussen* holding that affidavits of counsel, court personnel and potential witnesses on retrial are permissible to support a new trial motion under § 25-11-102(1), MCA, but affidavits of jurors are not. *Ahmann*, 766 P.2d at 856-57.  We concluded, however, that, where the only two people with personal knowledge of the alleged irregularity are a juror and the individual who committed the alleged infraction, juror affidavits would be admissible under § 25-11-102(1), MCA; under such facts, it would be irrational to permit the use of the bailiff's affidavit, but not the juror's, *Ahmann*, 766 P.2d at 857. We also observed that the bailiff's conduct constituted an outside influence on the jury for which a juror affidavit properly could be considered pursuant to Rule 606(b), M.R.Evid., and warned that only the facts regarding the alleged irregularity, and not any allegations relating to the effect of such an irregularity on the jurors' thought processes, were admissible even in a situation like that before us in *Ahmann*. *Ahmann*, 766 P.2d at 857.

*Ahmann* is distinguishable from the situation presently before us.  The irregularity asserted by Berg in this case involves allegedly improper communications from one juror to another. It does not involve conduct or communications between a nonjuror and a juror.  Therefore, the limited and carefully drawn *Ahmann* exception to the *Rasmussen* prohibition against use of a juror affidavit in support of a § 25-11-102(1), MCA, motion for a new trial is not applicable here.

9

We conclude that the Flinders affidavit could not be considered in conjunction with Berg's motion for a new trial under § 25-11-102(1), MCA.

## Section 25-11-102(2), MCA

Berg's motion for a new trial also was premised on his contention that Carroll's remarks constituted juror misconduct under § 25-11-102(2), MCA. In denying Berg's motion, the District Court noted the general prohibition against using juror affidavits to impeach the verdict contained in Rule 606(b), M.R.Evid., and determined that the Flinders affidavit did not fall within the exceptions to that general prohibition under which it could consider the affidavit. On appeal, Berg claims that the misconduct set forth in Flinders' affidavit was an external influence on the jury and, therefore, that Rule 606(b), M.R.Evid., permits consideration of the affidavit.

"[A] juror may not testify as to . . the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith." Rule 606(b), M.R.Evid. Insofar as is relevant to Berg's argument here, however, a juror may testify about what occurred during jury deliberations when the information pertains to whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was brought to bear on any juror. Rule 606(b), M.R.Evid.; Kelman, 915 P.2d at 859; Brogan, 900 P.2d at 287. Thus, while juror affidavits may not be

10

used to impeach a verdict based on internal influences on the jury, such as a mistake of evidence or misapprehension of the law, they can provide the basis for overturning a judgment where external prejudicial information is brought to the jury's attention or external influence is exerted on the jury. Kelman, 915 P.2d at 860 (citing Brogan, 900 P.2d at 287).

We must determine, therefore, whether the conduct of juror Carroll set forth in Flinders' affidavit was an external influence on the jury so as to permit consideration of the Flinders affidavit. Examples of external prejudicial information brought to the jury's attention or external influence exerted on the jury include a juror's telephone call obtaining information with regard to previous litigation by the plaintiff, visiting the scene of an accident, or bringing a newspaper article about the trial into the jury room for the jurors to see. Kelman, 915 P.2d at 860 (citations omitted). Juror Carroll's remarks to Flinders are not similar in any way to the clearly external matters described in Kelman. Indeed, those remarks by one juror to another contain no external information and, because they relate solely to juror Carroll's thoughts about the evidence presented and another juror, they do not constitute an external influence on the jury. We conclude, therefore, that the Flinders affidavit describing juror Carroll's statements did not fall within an exception to the general prohibition against use of juror affidavits to impeach a verdict contained in Rule 606(b), M.R.Evid.

Berg also contends that § 25-11-102, MCA, requires a new trial in cases where the substantial rights of a party have been affected. We need not address this contention, however, given our conclusion above that Carroll's conduct was not an external influence and, therefore, that the jury verdict cannot be impeached via Flinders' affidavit.

Finally, Berg argues that the conduct of juror Carroll reflected in Flinders' affidavit constituted a prejudgment of the case which violated both the statutory proscription contained in § 25-7-402, MCA, and the District Court's daily admonitions thereunder that discussions between jurors could occur only at the conclusion of the case and in the presence of all of the jurors. Recognizing that we have not previously addressed juror misconduct of this type, Berg urges us to follow California's lead on this issue and conclude that Carroll's conduct prejudiced his constitutional right to a fair and impartial jury so as to require a new trial. Berg relies primarily on In re Hitchings (Cal. 1993), 860 P.2d 466; Andrews v. County of Orange (Cal.Ct.App. 1982), 182 Cal. Rptr. 176; and Deward v. Clough (Cal.Ct.App. 1966), 54 Cal. Rptr. 68. Andrews is the most analogous factually to the case presently before us.

In Andrews, juror affidavits were submitted in support of a motion for a new trial based on juror misconduct. Andrews, 182 Cal. Rptr. at 180. Among the information disclosed in the juror affidavits was a possible prejudgment of the case by one juror in contravention of the statutorily-required admonition by the trial

12

court.   _Andrews_, 182 Cal. Rptr. at 183.   As a necessary prerequisite  to determining whether  the plaintiffs had been deprived of a fair trial, the California court reviewed applicable California law regarding the use of juror affidavits to impeach a verdict.   Under Cal. Evid. Code § 1150, "any otherwise admissible evidence"  could be submitted to  impeach a verdict based on "statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly."   _Andrews,_ 182 Cal. Rptr. at 180 n.4.  The only limitation on evidence admissible to impeach a verdict under California law is that no evidence may be submitted regarding the "effect of such statement, conduct, condition,  or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." _Andrews,_ 182 Cal. Rptr. at 180 n.4.  Having determined that the juror affidavits could be used to impeach the verdict,  the court concluded that a juror had prejudged the case and the plaintiffs had not received a fair trial.  _Andrews,_ 182 Cal. Rptr. at 184.

_Andrews_ clarifies that California law regarding the use of juror affidavits differs significantly from Montana law.  Under California law,  juror affidavits generally are admissible to impeach a verdict regarding objective conduct or events either in or out of the jury **room** which may have influenced the verdict improperly; the only limitation is that an affidavit cannot be used to establish the effect of such conduct or events on a juror's

13

decision regarding the verdict or on the jury's mental processes in reaching the verdict. In Montana, on the other hand, juror affidavits generally cannot be used to impeach a verdict regarding either matters occurring during the jury's deliberations or the effect of conduct or events on a juror's decision regarding the verdict or the mental processes by which the verdict was determined. Rule 606(b), M.R.Evid. The only exception to the general prohibition is narrowly drawn and, as we have concluded above, inapplicable here. Thus, while Andrews is factually similar to the case presently before us, the significant differences between California law and Montana law regarding the use of juror affidavits preclude its application here.

We conclude that the District Court did not abuse its discretion in denying Berg's motion for a new trial under § 25-11-102, MCA.

2. Did the District Court abuse its discretion in denying Berg's motion for a new trial which was based on failure to instruct the jury on the definition of "misrepresent?"

Question No. 2 on the special verdict form asked the jury whether Berg misrepresented payroll, employee status and employee duties by misclassifying his workers to the State Fund. The jury responded in the affirmative. Berg moved for a new trial based on the District Court's failure to instruct the jury on the definition of the word "misrepresent," maintaining that the District Court and all trial counsel, including his own, were at fault in this regard. The District Court denied Berg's motion. We review a district

14

court's denial of a motion for a new trial to determine whether the district court abused its discretion. <u>Kelman,</u> 915 P.2d at 859; <u>Brogan,</u> 900 P.2d at 286.

We note, at the outset, that Berg did not offer an instruction defining the word "misrepresent." Rule 51, M.R.Civ.P., provides that "[n]o party may assign as error the failure to instruct on any point of law unless that party offers an instruction thereon." Where no instruction was offered by the party asserting a trial court's failure to instruct, the party is precluded from assigning error in that regard. Werre v. David (1996), 275 Mont. 376, 394, 913 P.2d 625, 636; State v. Courchene (1992), 256 Mont. 381, 388, 847 P.2d 271, 275.

Berg urges that, notwithstanding his failure to offer an appropriate instruction, the "plain error" doctrine applies. Under very limited circumstances, the plain error doctrine permits review of errors not objected to at trial which result in substantial injustice by denying a party a fair trial. <u>Geiser,</u> 866 P.2d at 1108 (citing Rule 103(d), M.R.Evid.; Halldorson v. Halldorson (1977), 175 Mont. 170, 573 P.2d 169); Guertin v. Moody's Market, Inc. (1994), 265 Mont. 61, 67, 874 P.2d 710, 714. However, "'[p]lain error' generally involves an act or omission of a more serious nature than 'reversible error,' and only on rare occasion is the former doctrine invoked in civil cases." <u>Geiger,</u> 866 P.2d at 1108 (quoting Reno v. Erickstein (1984), 209 Mont. 36, 42, 679 P.2d 1204, 1207-08).

15

Berg relies on State Bank of Townsend v. Maryann's, Inc. (1983), 204 Mont. 21, 664 P.2d 295, *in* contending that the District Court's failure to instruct the jury on the definition of the word "misrepresent" affected his right to a fair trial. His reliance on State Bank of Townsend is misplaced.

In State Bank of Townsend, the trial court had prepared an extensive pretrial order which included agreed facts and both parties' contentions. State Bank of Townsend, 664 P.2d at 298. It appeared from the jury instructions that the theory of the defendants' case had changed during the course of the trial, resulting in confusion on the part of both the attorneys and the trial court regarding the law of the case. State Bank of Townsend, 664 P.2d at 298. As a result, contradictory and confusing instructions were given to the jury and we were unable to determine what the jury had been instructed to do or what the jury had done. State Bank of Townsend, 664 P.2d at 298-99. Despite the absence of adequate objections to the instructions, we applied the plain error doctrine because the error affected the substantial right of both parties to instructions which correctly set forth a legal basis for assessing damages, as well as an understandable method of computing the amount of such damages. State Bank of Townsend, 664 P.2d at 300.

Here, there was no change in legal theory over the course of trial and no resulting contradictory and confusing jury instructions. Moreover, both parties had a significant amount of time to review proposed jury instructions and submit additional

16

instructions as needed. Trial counsel simply failed to propose an instruction defining "misrepresent" in the ordinary course of events.

In addition, Berg helped draft the special verdict form containing the word "misrepresent" and did not object to it. A district court will not be put in error for a ruling or procedure in which the appellant acquiesced or participated, or to which the appellant made no objection. In re Pedersen (1993), 261 Mont. 284, 287, 862 P.2d 411, 413.

We decline to apply the plain error doctrine to the case presently before us. We conclude that the District Court did not abuse its discretion in denying Berg's new trial motion which was based on instructional error.

3. Did the District Court abuse its discretion in denying Berg's motion to vacate the judgment and enter judgment in his favor which was based on the State Fund's failure to plead constructive fraud with sufficient particularity?

In his motion to vacate the judgment, Berg argued that the State Fund failed to sufficiently plead constructive fraud in its amended complaint. The District Court denied his motion and determined that, when the amended complaint was filed, Berg was put on notice regarding the allegations of constructive fraud and that he was not prejudiced due to a lack of actual notice or understanding of the allegations regarding constructive fraud. The District Court concluded that the pleadings were not so defective as to require that the judgment in favor of the State Fund be vacated

17

We review a trial court's discretionary rulings, such as trial administration issues, rulings on posttrial motions and similar rulings, to determine if the trial court abused its discretion. Van Loan v. Van Loan (1995), 271 Mont. 176, 178, 895 P.2d 614, 615 (citing Montana Rail Link v. Byard (1993), 260 Mont. 331, 337, 860 P.2d 121, 125).

> Constructive fraud is statutorily defined in Montana as:
>
> (1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or
> (2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

Section 28-2-406, MCA. Pursuant to Rule 9(b), M.R.Civ.P., the circumstances constituting fraud must be stated with particularity. To establish a prima facie case of actual fraud, the party asserting the claim must present proof of nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance upon its truth; (8) the hearer's right to rely upon it; and (9) the hearer's consequent and proximate injury or damage. Davis v. Church of Jesus Christ (1993), 258 Mont. 286, 293, 852 P.2d 640, 644 (citing Lee v. Armstrong (1990), 244 Mont. 289, 293, 798 P.2d 84, 87). A claim of misrepresentation or constructive fraud requires similar proof, except that the plaintiff need not prove the fifth element

18

relating to intent to deceive or dishonesty of purpose. <u>Davis</u>, 852 P.2d at 644 (citing <u>Lee</u>, 798 P.2d at 88)

The State Fund's claim against Berg for constructive fraud was pleaded as follows:

COUNT VI

<u>CONSTRUCTIVE FRAUD</u>
<u>§ 28-2-406, MCA</u>

27. Plaintiff incorporates by reference Counts I through V, as though fully set forth herein, and by way of further allegation states as follows:

28. [Berg], without actual intent to commit fraud, did engage in a pattern of under-reporting and non-reporting of payroll, employee status and employee duties in an effort to reduce the proper premium payments which should have been made to Plaintiff, which did mislead the Plaintiff to its prejudice. Said conduct amounts to constructive fraud pursuant to § 28-2-406, MCA.

29. [Berg's] conduct has caused damage to the Plaintiff in excess [sic] Four Hundred Two Thousand Three Hundred Twenty And 05/100 ($402,320.05) dollars, the exact amount to be proven at trial.

In previous Counts incorporated by reference in the constructive fraud claim, the State Fund alleged that Berg obtained a workers' compensation insurance policy from the State Fund which required him to submit timely payroll reports, remit payment of premiums billed and allow the State Fund to audit his books and records to determine whether proper payroll reports and premiums were submitted and paid. It also alleged that an audit of Berg's operations completed on or about July 19, 1991, resulted in Berg being billed an additional $390,131.56 for premiums due for the periods audited. Finally, the State Fund alleged that Berg's conduct constituted a pattern of misrepresentation.

19

Berg contends that the State Fund's amended complaint is defective because not all elements of a constructive fraud claim are alleged with particularity. However, the appropriate interplay between the "particularity" requirement of Rule 9(b), M.R.Civ.P., and Montana's "notice pleading" rule is well established.

> "Of primary importance in understanding the particularity requirement of Rule 9(b) is the recognition that it does not render the general principles set forth in Rule 8 entirely inapplicable to pleadings alleging fraud; rather, the two rules must be read in conjunction with each other. It should be kept in mind that Rule 8(a) requests 'a short and plain statement of the claim' for relief[.] . Thus, it is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules[.] . .
> The sufficiency of a particular pleading under Rule 9(b) depends upon a number of variables. For example, the degree of detail required often turns on the context in which the fraud is alleged to have occurred[.] Perhaps the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading." Wright & Miller, Federal Practice and Procedure: Civil § 1298, p. 406-07, 410, 4151.1

Irving v. School Dist. No. 1-1A (1991), 248 Mont. 460, 467, 813 P.2d 417, 421 (quoting Fraunhofer v. Price (1979), 182 Mont. 7, 14-15, 594 P.2d 324, 328-29).

We focus first on the "most basic consideration" in determining the sufficiency of a pleading under the so-called Fraunhofer rule; namely, whether the State Fund's allegations of constructive fraud were sufficiently detailed to provide Berg with adequate notice of the claim so as to enable him to prepare a responsive pleading. See Irving, 813 P.2d at 421. The State Fund

20

alleged a constructive fraud claim based on Berg's pattern of misrepresentation via underreporting and nonreporting of payroll, employee status and employee duties under his workers' compensation insurance policy with the State Fund. It further alleged that Berg's conduct reflected an effort to reduce the proper premiums he owed the State Fund and that the State Fund was misled by his conduct vis-a-vis calculation of his workers' compensation insurance premiums. Finally, the State Fund alleged that it was damaged by Berg's conduct in the amount of underbilled workers' compensation insurance premiums.

Berg did not contend in the District Court, and does not contend in this Court, that the allegations provided insufficient notice of the claim or were so lacking in detail as to negate his ability to prepare responsive pleadings. Indeed, in answering the claim, he denied the allegations of constructive fraud. Berg later filed a motion for summary judgment and supporting brief on a "time limitations" issue pursuant to the policy in which he argued, in part, that his reporting practices to the State Fund were not fraudulent. Berg again denied the allegations of actual and constructive fraud in the pretrial order and stated that he did not admit any fraud. Thus, Berg's own conduct in responding to the claim and putting the State Fund to its proof belies any notion that its allegations of constructive fraud were insufficient to provide adequate notice and enable Berg to respond.

In addition, it is appropriate to consider the context in which the fraud is alleged to have occurred in determining how much

21

detail is required to render a pleading sufficiently particular under Rule 9(b), M.R.Civ.P. Irving, 813 P.2d at 421. Here, Berg and the State Fund had been involved in an insured-insurer relationship via Berg's State Fund workers' compensation insurance policy for some fifteen years at the time the original complaint was filed in this case. Berg's policy required him to timely and accurately report employee wages so the State Fund could calculate his workers' compensation insurance premiums. His own reports, together with the findings of the audit of his operations--of which he was aware and in which he was involved--formed the basis for the State Fund's action against him for constructive fraud. In this context, requiring more detailed allegations of constructive fraud would serve no rational purpose and would exalt form over substance. Indeed, to do so would ignore the "general simplicity and flexibility [in pleading] contemplated by the rules . . ." See Irving, 813 P.2d at 421.

Berg contends that C. Haydon Ltd. v. Montana Min. Properties (1993), 262 Mont. 321, 864 P.2d 1253, overrules the appropriate interplay between Rules 8(a) and 9(b), M.R.Civ.P., which we enunciated in Irving and Fraunhofer, leaving a strict requirement that all elements of a fraud claim be pled with particularity. In C. Haydon Ltd., we agreed with the district court's determination that the defendant failed to meet the "particularity" requirements of Rule 9(b), M.R.Civ.P., because various of its fraud allegations were contradictory, based only "on information and belief" of defendant's counsel, or unsupported by facts. C. Haydon Ltd., 864

22

P.2d at 1256. In addition, we observed that the defendant's allegations did not address seven of the nine fraud elements at all. C. Havdon Ltd., 864 P.2d at 1256. On that basis, we held that the defendant failed to allege fraud with sufficient particularity. We reaffirmed that Rules 9(b) and 8(a), M.R.Civ.P., must be harmonized, but noted that the statement of the claim cannot be so short or plain, under Rule 8(a), M.R.Civ.P., as to defeat the purposes of Rule 9(b), M.R.Civ.P. C. Havdon Ltd., 864 P.2d at 1256-57.

Here, the State Fund's claim for constructive fraud did not contain either contradictory allegations or "information and belief" allegations. While perhaps "inartful," as the District Court stated, the State Fund's constructive fraud allegations were not so short or so plain as to defeat the particularity requirement of Rule 9(b), M.R.Civ.P., or the "most basic consideration" underlying that requirement--namely, that the allegations provide adequate notice to enable Berg to prepare responsive pleadings. Moreover, as noted above, far from overruling the Fraunhofer rule that Rules 8(a) and 9(b), M.R.Civ.P., be harmonized, C. Havdon Ltd. clarified that neither Rule 8(a) nor Rule 9(b), M.R.Civ.P., can be applied exclusively when determining whether a pleading alleges fraud with sufficient particularity. See C. Havdon Ltd., 864 P.2d at 1256-57.

On this record, we conclude that the State Fund's allegations of constructive fraud were sufficient to meet the requirements of Rules 8 and 9, M.R.Civ.P., and the Fraunhofer rule. We hold,

23

therefore, that the District Court did not abuse its discretion in denying Berg's motion to vacate the judgment which was based on the State Fund's failure to plead constructive fraud with sufficient particularity.

4. Did the District Court abuse its discretion in denying Berg's motion to vacate the judgment and enter judgment in his favor which was based on a statute of limitations bar to the constructive fraud claim?

Berg also based his motion to vacate the judgment on the two-year statute of limitations contained in § 27-2-203, MCA. He contended that the statute of limitations began to run on or about February 24, 1989, when Knecht began the audit of his operations, and had run prior to the State Fund filing its complaint in January of 1992. In denying the motion, the District Court rejected Berg's statute of limitations argument both procedurally and substantively. In pertinent part, the District Court determined that the statute of limitations defense was not included in the pretrial order signed by the parties and that the pretrial order was not amended to include that defense prior to trial. We review discretionary trial court rulings to determine whether the court abused its discretion. Van Loan, 895 P.2d at 615.

A party must set forth affirmatively any statute of limitations defense in pleading to a preceding pleading. Rule 8(c), M.R.Civ.P. A pretrial order entered pursuant to Rule 16(e), M.R.Civ.P., however, governs and controls the subsequent course of the lawsuit unless modified by a subsequent order. See Zimmerman v. Robertson (1993), 259 Mont. 105, 111, 854 P.2d 338, 342; Naftco Leasing Ltd. v. Finalco, Inc. (1992), 254 Mont. 89, 93, 835 P.2d

24

728, 731. The purpose of pretrial orders is to prevent surprise, simplify the issues and permit counsel to prepare their case for trial on the basis of the pretrial order. Zimmerman, 854 P.2d at 342 (citing Workman v. McIntyre Const. Co. (1980), 190 Mont. 5, 617 P.2d 1281). Failure to raise an issue or theory in the pretrial order may result in a waiver of that issue or theory. Nentwig v. United Industry, Inc. (1992), 256 Mont. 134, 138, 845 P.2d 99, 102.

Here, Berg pleaded the statute of limitations as an affirmative defense in answering the State Fund's amended complaint, as required by Rule 8(c), M.R.Civ.P. Thereafter, and via a discovery response, he abandoned this theory. Specifically, in answer to an interrogatory requesting information about the statute of limitations defense he had pleaded, Berg stated that he "intend[ed] to abandon this defense." Moreover, the pretrial order in this case, prepared by trial counsel for both parties and approved by them as to form and content, does not contain a statute of limitations defense by Berg. Given Berg's interrogatory response, this is not surprising.

Pursuant to both its terms and Zimmerman, the pretrial order superseded the pleadings and governed the subsequent course of the action. We conclude that, because Berg did not include the statute of limitations defense in the pretrial order, he waived that defense. We hold, therefore, that the District Court did not abuse its discretion in denying Berg's motion to vacate the judgment which was based on the statute of limitations.

5. Did the District Court err in denying the State Fund's motion for a directed verdict which was based on

25

the existence of a disputable presumption of employee status?

When Knecht began his audit of Berg's operations in February of 1989, he questioned whether certain individuals were independent contractors, as Berg claimed, or employees. He investigated the status of the individuals and determined that all but twenty-three of them were independent contractors. Knecht asked Berg for additional information regarding the remaining twenty-three individuals. He told Berg that, if the required documentation was not provided, the individuals would be classified as Berg's employees and additional workers' compensation premiums would be owed for them. Berg did not provide any further information and Knecht classified the individuals as Berg's employees. On that basis, the State Fund alleged that Berg owed additional workers' compensation premiums based on the unreported wages of the twenty-three employees.

Before closing arguments at trial, the State Fund moved for a directed verdict on the issue of workers' compensation premiums owed by Berg on the unreported wages of the individuals Knecht classified as employees but Berg contended were independent contractors. The State Fund argued that § 39-71-120(2), MCA, contains a presumption that an individual performing services for remuneration is an employee unless the requirements of § 39-71-120(1), MCA, for independent contractor status are met, and that Berg had not rebutted that presumption by presenting evidence that the twenty-three individuals were independent contractors. The District Court denied the State Fund's motion. Although the

District Court did not specifically address whether § 39-71-120(2), MCA, creates a presumption of employee status, it implicitly concluded that the statute did not contain such a presumption in denying the State Fund's motion for a directed verdict. The District Court then allowed the jury to decide whether Berg owed premiums for the twenty-three individuals and the jury returned a verdict in Berg's favor.

A directed verdict should be granted only when there is a complete absence of any evidence which would justify submitting an issue to a jury; all inferences which can be drawn from the evidence must be considered in a light most favorable to the opposing party. Werre 913 P.2d at 630 (citing Pierce v. ALSC Architects, P.S. (1995), 270 Mont. 97, 107, 890 P.2d 1254, 1260).

Under the law in effect during the time period covered by the workers' compensation audit, an independent contractor was statutorily defined as "one who renders service in the course of an occupation" and:

> (a) has been and will continue to be free from control or direction over the performance of the services, both under his contract and in fact; and
> (b) is engaged in an independently established trade, occupation, profession, or business.

Section 39-71-120(1), MCA (1987). Pursuant to § 39-71-120(2), MCA (1987), "[a]n individual performing services for remuneration is considered to be an employee under this chapter unless the requirements of subsection (1) are met." (Emphasis added.)

When the facts surrounding an individual's arrangement with an employer are relatively undisputed, the question of whether the

27

individual is an independent contractor or an employee is a question of law. Potter v. Department of Labor & Ind. (1993), 258 Mont. 476, 479, 853 P.2d 1207, 1209 (citation omitted); see also Northwest Pub. v. Department of Labor & Ind. (1993), 256 Mont. 360, 362, 846 P.2d 1030, 1031 (citation omitted). We review a district court's conclusions of law to determine whether they are correct. Topco, Inc., 912 P.2d at 808.

The State Fund contends that the phrase "is considered to be" in § 39-71-120(2), MCA (1987), creates a statutory presumption that an individual providing services for another is an employee and not an independent contractor. Therefore, according to the State Fund, once sufficient facts are established to give rise to the presumption, the party asserting independent contractor status bears the burden of rebutting the presumption. Berg's sole argument is that § 39-71-120(2), MCA (1987), does not create a disputable presumption of employee status because §§ 26-1-601 and 26-1-602, MCA, and Rule 301, M.R.Evid., contain an exhaustive and exclusive list of conclusive and disputable presumptions which does not include an employee status presumption pursuant to § 39-71-120(2), MCA (1987).

Rule 301, M.R.Evid., defines presumptions and generally addresses their classification and effect. All presumptions, other than conclusive presumptions, are disputable presumptions and may be controverted. Rule 301(b)(2), M.R.Evid. If a disputable presumption is not overcome by a preponderance of the evidence, the

28

trier of fact must find the assumed fact in accordance with the presumption. Rule 301(b)(2), M.R.Evid.

Section 26-1-601, MCA, states that "[t]he following presumptions are conclusive" and then specifically lists three conclusive presumptions; subsection (4) provides that any other presumption which, by statute, is expressly made conclusive is a conclusive presumption. Thus, § 26-1-601, MCA, limits conclusive presumptions to those listed therein or expressly set forth in other statutes.

The language of § 26-1-602, MCA, which addresses disputable presumptions, is markedly different. It states that "[a]ll other presumptions are 'disputable presumptions' and may be controverted by other evidence." Section 26-I-602, MCA. The statute then states "[t]he following are of that kind," and provides a listing of thirty-eight disputable presumptions.

We have not previously addressed whether the list of disputable presumptions contained in § 26-1-602, MCA, is exhaustive. Certainly, the language of § 26-I-602, MCA, which provides that "[t]he following are of that kind [disputable presumptions]" does not indicate an intent that the list be exhaustive or exclusive. Moreover, while our Commission on Rules of Evidence provided a table of statutory conclusive presumptions, statutory disputable presumptions and common law disputable presumptions, the Compiler's Comments clarify that the list of presumptions in that table "is not intended as an authority for whether or not any particular presumption exists, but only as a

29

research guide to presumptions generally." Part Compiler's Comments, Title 26, chapter 1, part 6, Table D-Presumptions. The Comments further state that "[t]his list is intended only as an aid to Montana judges and lawyers, and the inclusion or exclusion from this table of any particular presumption should have no effect on a court's treatment of that particular presumption." Part Compiler's Comments, Title 26, chapter 1, part 6, Table D-Presumptions. We conclude, therefore, that the absence of the § 39-71-120(2), MCA (1987), "is considered to be" language in the § 26-I-602, MCA, enumeration of disputable presumptions does not establish that the phrase at issue here is not a disputable presumption.

Moreover, in interpreting § 39-71-120(2), MCA (1987), we look first to the plain meaning of the words it contains. Werre, 913 P.2d at 631 (citing Clarke v. Massey (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088); Gulbrandson v. Carey (1995), 272 Mont. 494, 500, 901 P.2d 573, 577. Where the language is clear and unambiguous, the statute speaks for itself and we will not resort to other means of interpretation. Werre 913 P.2d at 631 (citing Clarke, 897 P.2d at 1088). "In the search for plain meaning, 'the language used must be reasonably and logically interpreted, giving words their usual and ordinary meaning.'" Werre, 913 P.2d at 631 (citations omitted).

"Consider" means to think about, regard or classify. Webster's Third New International Dictionary 483 (1971). Therefore, an individual who performs services for another person

30

may be thought about, regarded or classified as an employee unless the requirements for independent contractor status are met. A reasonable and logical interpretation of the phrase "is considered to be" leads us to conclude that this phrase in § 39-71-120(2), MCA (1987), creates a disputable presumption of employee status and the District Court erred in concluding to the contrary.

In order for the State Fund to rely on the employee status presumption contained in § 39-71-120(2), MCA (1987), it necessarily must have established that the individuals it contended were employees had performed services for Berg for remuneration. See § 26-1-401, MCA. Berg does not dispute that the State Fund did so. Having satisfied this threshold requirement, the State Fund became entitled to the presumption that the twenty-three individuals were Berg's employees. Section 39-71-120(2), MCA (1987). Thereafter, the burden shifted to Berg to rebut the presumption by presenting evidence establishing that the individuals were independent contractors pursuant to § 39-71-120(1), MCA (1987), and our cases thereunder. Section 26-1-602, MCA; Rule 301(b)(2), M.R.Evid.

As noted above, Berg's sole contention in responding to the State Fund's cross-appeal is that § 39-71-120(2), MCA (1987), does not constitute a disputable presumption of employee status and, therefore, that he bore no burden of establishing that the twenty-three individuals were independent contractors. We have concluded otherwise. Because Berg did not dispute the fact that the twenty-three individuals had performed services for him for remuneration and because he does not argue that he met his burden of

31

establishing independent contractor status for the individuals in question, Rule 301(b) (2), M.R.Evid., and <u>Potter</u> required the District Court to direct a verdict as a matter of law that the twenty-three individuals were Berg's employees in accordance with the presumption contained in § 39-71-120 (2), MCA (1987). Therefore, we hold that the District Court erred in denying the State Fund's motion for a directed verdict which was based on the existence of a disputable presumption of employee status.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion,

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

32