No. 98-413

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 201

295 Mont. 438

938 P.2d 999

THE TRAVELERS INDEMNITY COMPANY,

Plaintiff and Respondent,

v.

NIEL ANDERSEN,

Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kenneth H. Gray; Jackson & Rice, Helena, Montana

For Respondent:

Joe Seifert; Keller, Reynolds, Drake, Johnson & Gillespie,

Helena, Montana

_____

Submitted on Briefs: April 22, 1999

Decided: August 30, 1999

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court

1. ¶Niel Andersen (Andersen) appeals from the judgment entered by the First Judicial District Court, Lewis and Clark County, on a jury verdict in favor of The Travelers Indemnity Company (Travelers). We affirm.

2. ¶Andersen raises the following issues:

3. ¶1. Did the District Court err in denying Andersen's motion for summary judgment asserting that Travelers' cause of action was barred by the statute of limitations?

4. ¶2. Did the District Court abuse its discretion in excluding expert witness testimony?

5. ¶3. Did the District Court abuse its discretion in excluding a report prepared by a deputy state fire marshal?

## BACKGROUND

1. ¶In 1974, Andersen purchased a large house in Helena, Montana, which subsequently was destroyed by fire on May 25, 1988. Local authorities investigating the fire determined the cause was arson, but could not determine with any certainty who was involved in the arson.

2. ¶At the time of the fire, the house was insured under a policy issued by Travelers. Andersen submitted a claim to Travelers, requesting payment under the insurance policy for the losses incurred by the destruction of the house. In conjunction with his claim, Andersen provided Travelers with his sworn statement that he was not involved in setting the fire which destroyed the house and he did not know who was responsible for the fire. In September of 1988, Travelers paid Andersen over $450,000 pursuant to the policy terms.

3. ¶Several years after the fire, the Lewis and Clark County Attorney (County Attorney) received information which he believed implicated Andersen and two others in a conspiracy to commit the 1988 arson. The County Attorney investigated further and, in July of 1992, filed an information in district court charging Andersen and Thomas Rippingale (Rippingale) with the felony offense of conspiracy to commit arson. A third alleged co-conspirator, Brian Hardy (Hardy), was charged with and pled guilty to the offense of arson in a separate proceeding.

4. ¶Upon learning of the newly discovered evidence and the filing of criminal charges

relating to the 1988 arson fire, Travelers filed this action against Andersen, Rippingale and Hardy. The complaint alleged that the defendants conspired to commit the arson which destroyed Andersen's house and sought reimbursement of the monies it paid Andersen under the insurance policy. Andersen subsequently moved for summary judgment, asserting that Travelers' cause of action was barred by the statute of limitations, and the District Court denied his motion.

5. ¶Hardy eventually was dismissed from the action and the proceedings against Rippingale were stayed as a result of his filing a petition for bankruptcy. The case proceeded to jury trial with Andersen as the sole defendant. The jury returned a verdict for Travelers, awarding it $465,175 in damages. Travelers then successfully moved the District Court to award prejudgment interest on the damages. The District Court entered judgment on the verdict, plus prejudgment interest and costs, in the amount of $905,789.94. Andersen appeals.

## DISCUSSION

1. ¶1. Did the District Court err in denying Andersen's motion for summary judgment asserting that Travelers' cause of action was barred by the statute of limitations?

2. ¶Andersen moved for summary judgment on the grounds that Travelers' complaint alleged a cause of action based on fraud and that, pursuant to § 27-2-203, MCA, the statute of limitations for an action based on fraud is two years. He argued that, because the actions which Travelers alleged constituted fraud occurred in 1988, the complaint--filed four years later in 1992--was untimely and the action was barred. The District Court denied the motion, but did not set forth the basis for its decision. Andersen asserts error.

3. ¶We review a district court's ruling on a summary judgment motion *de novo* and apply the same Rule 56, M.R.Civ.P., criteria applied by that court. Gomez v. State, 1999 MT 67, ¶ 7, 975 P.2d 1258, ¶ 7, 56 St.Rep. 272, ¶ 7 (citation omitted). In that regard,

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), M.R.Civ.P. Generally, we begin our summary judgment review by determining whether the moving party established the absence of genuine issues of material fact. Gomez, ¶ 7. In the present case, however, the parties do not dispute the material facts relating to the summary judgment issue. Consequently, the question before us is whether Andersen was entitled to judgment as a matter of law. The District Court concluded that Andersen was not entitled to judgment as a matter of law and we review that conclusion to determine whether the interpretation of the law is correct. See Gomez, ¶ 7 (citation omitted).

1. ¶Andersen reiterates on appeal his arguments that Travelers' complaint alleged a cause of action sounding in fraud, for which the statute of limitations is two years, and that, because the complaint was not filed until nearly four years after the alleged fraudulent acts, the action is barred. Travelers responds that the gravamen of its complaint is breach of the insurance contract, rather than fraud, and its complaint was filed well within the 8-year statute of limitations period set forth in § 27-2-202 (1), MCA, for an action based on a written contract.

2. ¶Under certain circumstances, potential tort liability may coexist with contract liability. Thiel v. Taurus Drilling Ltd. 1980-II (1985), 218 Mont. 201, 209, 710 P.2d 33, 38; Unruh v. Buffalo Bldg. Co. (1981), 194 Mont. 553, 555, 633 P.2d 617, 618. Where an action may be based either in tort or contract, the injured party may elect the theory under which he or she wishes to proceed and the statute of limitations governing that theory will control. Weible v. Ronan State Bank (1989), 238 Mont. 235, 237, 776 P.2d 837, 838. However, where doubt exists as to the theory of the action--and, therefore, which statute of limitations should apply--the general rule is that the doubt is resolved in favor of the longer statute of limitations. Weible, 238 Mont. at 237, 776 P.2d at 838 (citing Thiel, 218 Mont. at 212, 710 P.2d at 40). "The choice of which statute of limitation should apply ultimately rests on a characterization of the essence of the claim." Thiel, 218 Mont. at 210, 710 P.2d at 38. Consequently, we look to the substance of the complaint to determine the nature of the action and which statute of limitation applies. Weible, 238 Mont. at 237, 776 P.2d at 838.

3. ¶Travelers' complaint alleges that it issued a policy to Andersen insuring his house which included fire hazard coverage. The policy provided that the fire hazard coverage was not available if the property was damaged through intentional arson by Andersen. The policy required that, in the event of a fire loss, Andersen was to provide Travelers with a true and correct proof of loss statement. The complaint

further alleges that, pursuant to this insurance contract provision, Andersen presented Travelers with two sworn proofs of loss stating that he was not involved with the incident which caused the destruction of his house and also gave Travelers sworn statements that he was not responsible for the fire and did not know the identity of the responsible people. The complaint alleges that, in reliance on Andersen's representations that he was not involved with the arson, Travelers paid him monies pursuant to the policy's terms.

4. ¶Travelers' complaint next alleges that Andersen, Rippingale and Hardy conspired to commit and committed the arson at issue in order to breach the insurance contract between Travelers and Andersen and that, "[b]y this breach of contract and fraud, Andersen has received the fire insurance proceeds to which he would otherwise not be entitled." Furthermore, the complaint alleges that Travelers is subrogated to the amounts paid Andersen as a result of the arson, through both the terms of the policy and Montana law, and that

Niel Andersen has wrongfully, deceitfully, and fraudulently committed arson to his property . . . in concert with Rippingale and Hardy, and has fraudulently submitted proofs of loss, statements under oath, and other information to Plaintiff, violating his insurance contract with Plaintiff, and wrongfully receiving Plaintiff's insurance proceeds through this fraud.

1. ¶Although Travelers' complaint clearly alleges that Andersen committed fraud, it also clearly alleges that Andersen's actions breached the insurance contract and that Travelers is entitled, under the terms of the contract, to be reimbursed for the monies it paid Andersen. While the complaint does not specifically denominate the claims as either tort or contract, we have held that

[t]he general rule applied to situations falling within the twilight zone of contract and tort law is that doubt must be resolved in favor of an action based upon contract.

Thiel, 218 Mont. at 209-10, 710 P.2d at 38.

1. ¶We conclude that Travelers' complaint sufficiently alleges a cause of action based on breach of a written contract to allow application of the 8-year statute of limitations set forth in § 27-2-202(1), MCA. As a result, we further conclude that

the complaint, filed within four years of the alleged acts on which the claim is based, was timely filed.

2. ¶We hold that the District Court did not err in denying Andersen's motion for summary judgment asserting that Travelers' cause of action was barred by the statute of limitations.

3. ¶2. Did the District Court abuse its discretion in excluding expert witness testimony?

4. ¶As stated above, Travelers sued Andersen, Rippingale and Hardy alleging that they were co-conspirators in the arson. Travelers stipulated to dismiss Hardy from the action prior to the trial. However, because Hardy had admitted that Rippingale solicited him to set the fire which destroyed Andersen's house, he was a primary witness in Travelers' case against Andersen. A number of years before the fire, Hardy had suffered a closed head injury which resulted in various psychological problems including poor memory and a propensity to be manipulated easily. As a result, his credibility as a witness was a major issue between the parties.

5. ¶Andersen intended to challenge Hardy's credibility at trial through the expert testimony of Dr. William Stratford (Stratford), a psychiatrist who examined Hardy and submitted a report stating, in essence, that Hardy was incapable of telling the truth. Travelers moved *in limine* to exclude Stratford's testimony, arguing that expert testimony regarding a witness's credibility is inadmissible. The District Court granted Travelers' motion based on our decision in Matter of Teaching Certificate of Thompson (1995), 270 Mont. 419, 893 P.2d 301. Andersen asserts error.

6. ¶Evidentiary rulings, including whether expert testimony is admissible, are within the trial court's discretion. Certificate of Thompson, 270 Mont. at 427, 893 P.2d at 305. Consequently, we review the District Court's decision granting Travelers' motion *in limine* to determine whether the court abused its discretion.

7. ¶Generally, expert testimony evaluating the credibility of a witness is inadmissible. Certificate of Thompson, 270 Mont. at 427, 893 P.2d at 306; State v. Harris (1991), 247 Mont. 405, 410, 808 P.2d 453, 455. The question of a witness's credibility lies exclusively within the province of the jury. Expert testimony regarding witness credibility improperly invades the jury's function in that the jury may defer to the expert's expertise and infer that the expert believes the witness to be credible or incredible. Certificate of Thompson, 270 Mont. at 429, 893 P.2d at 307; Harris, 247 Mont. at 409, 808 P.2d at 455.

8. ¶Andersen contends that Stratford's testimony was to be directed toward describing Hardy's mental condition as a result of the injury he suffered rather than to directly assail Hardy's credibility. He asserts Stratford was to render opinions regarding Hardy's ability to appreciate the nature and quality of his acts, his capacity for lying,

his inability to relate his impressions of prior incidents, his poor memory and his tendency to be easily influenced or manipulated by others. He argues that it is permissible for an expert to testify about these types of things, that the testimony "goes to the very heart of the defense" and that, in determining Stratford's testimony was inadmissible, the District Court excluded the only evidence he had to impeach Hardy's credibility.

9. ¶The premise underlying Andersen's argument is that Stratford's testimony was his only evidence impeaching Hardy's credibility. Our review of the record, however, reveals that Andersen elicited testimony from other witnesses regarding virtually all of the points on which he contends Stratford was to testify. For example, Hardy testified on cross-examination regarding his accident, the nature of his head injury and that he had difficulty with his memory. Andersen's counsel also was able to highlight numerous inconsistencies in Hardy's testimony during cross-examination. Furthermore, Rippingale testified that Hardy was "a space cadet," was incapable of telling the truth, would adopt memories suggested to him by others regardless of whether the memories were true, was easily manipulated by family members and close friends, and had "diminished capacity." Hardy's wife testified that he had selective memory, would tell lies when it suited his needs and was capable of saying he did things he actually had not done.

10. ¶The record is clear that, Andersen's contention to the contrary notwithstanding, Stratford's testimony was far from the only testimony he had to impeach Hardy's credibility. Thus, the premise underlying Andersen's argument fails.

11. ¶We hold that the District Court did not abuse its discretion in excluding the expert witness testimony.

12. ¶3. Did the District Court abuse its discretion in excluding a report prepared by a deputy state fire marshal?

13. ¶At trial, Andersen offered into evidence a report written by a deputy state fire marshal who had assisted local law enforcement in investigating the fire but who had died prior to trial and was unavailable to testify. Travelers objected to admission of the document on the basis that it had not been endorsed as an exhibit in the pretrial order. The District Court reserved its ruling.

14. ¶During a subsequent discussion in chambers, Andersen again offered the document into evidence, arguing that it was admissible under Rule 803(6), M.R.Evid., as a record kept in the ordinary course of business. Travelers objected on the basis the document was an investigative report by law enforcement inadmissible under Rule

803(8)(i), M.R.Evid. The District Court concluded that the document was an investigative report and excluded it from evidence. Andersen asserts error and, as stated above, we review a district court's evidentiary rulings to determine whether the court abused its discretion. See Certificate of Thompson, 270 Mont. at 427, 893 P.2d at 305.

15. ¶Andersen contends that the District Court should have admitted the fire marshal's report under the business records exception to the hearsay rule set forth in Rule 803 (6), M.R.Evid. In response, Travelers reiterates its first objection to the report, which was not addressed by the District Court, that the document was properly excluded because Andersen failed to identify it as an exhibit in the pretrial order.

16. ¶The purpose of pretrial orders is to simplify issues, prevent surprise and allow counsel to prepare their cases for trial based on the pretrial order. State ex rel. Ins. Fund v. Berg (1996), 279 Mont. 161, 180, 927 P.2d 975, 986. Additionally, a pretrial order governs the subsequent course of the action unless modified by a later order. Rule 16(e), M.R.Civ.P.; Berg, 279 Mont. at 179-80, 927 P.2d at 986. Consequently, we often have held that parties may not assert issues or other matters which were not included in the pretrial order. See, e.g., Berg, 279 Mont. at 180, 927 P.2d at 986; Naftco Leasing Ltd. v. Finalco, Inc. (1992), 254 Mont. 89, 94-95, 835 P.2d 728, 731-32; Bache v. Gilden (1992), 252 Mont. 178, 182, 827 P.2d 817, 819. More specifically, we previously have held that a district court erred in admitting evidence not listed as an exhibit in the pretrial order. Workman v. McIntyre Const. Co. (1980), 190 Mont. 5, 11-12, 617 P.2d 1281, 1284-85.

17. ¶Andersen concedes that he did not list the fire marshal's report as an exhibit in the pretrial order. He asserts, however, that the document was offered as rebuttal and that a party is not required to list rebuttal evidence in the pretrial order. We disagree with Andersen's characterization of this exhibit as rebuttal evidence.

18. ¶Andersen is correct that a party is not required to give advance notice of witnesses or evidence offered as rebuttal. See, e.g., Valley Properties v. Steadman's Hardware, Inc., (1992), 251 Mont. 242, 250, 824 P.2d 250, 255. However, rebuttal evidence is evidence offered to counteract new matter presented by the adverse party. Massman v. City of Helena (1989), 237 Mont. 234, 243, 773 P.2d 1206, 1211. Here, Andersen did not offer the fire marshal's report to counter any new evidence presented by Travelers. Rather, he offered the report during cross-examination of a witness presented during Travelers' case-in-chief. Evidence in a plaintiff's case-in-chief is not "new matter" to be counteracted with rebuttal evidence. See, e.g., Miller v. Frasure (1994), 264 Mont. 354, 370-71, 871 P.2d 1302, 1312. We conclude that the fire marshal's report was not rebuttal evidence and, as a result, we further conclude

that the report was properly excluded because Andersen failed to list it as an exhibit in the pretrial order.

19. ¶We hold that the District Court did not abuse its discretion in excluding the fire marshal's report.

20. ¶Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER