FILED

December 30 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0370

DA 15-0370

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 353

---

IN RE THE CROW WATER COMPACT,

IN THE MATTER OF THE ADJUDICATION OF
EXISTING AND RESERVED RIGHTS TO THE
USE OF WATER, BOTH SURFACE AND
UNDERGROUND, OF THE CROW TRIBE OF
INDIANS OF THE STATE OF MONTANA

---

APPEAL FROM:    Montana Water Court, Cause No. WC 2012-06
Honorable Russ McElyea, Chief Water Judge


COUNSEL OF RECORD:

For Appellants:

W. Scott Green, John C. Vannatta, Patten, Peterman, Bekkedahl
& Green, PLLC, Billings, Montana

For Appellee Apsaalooke (Crow) Tribe:

Nathan A. Espeland, Espeland Law Office, PLLC, Columbus, Montana

Merrill C. Godfrey, Akin Gump Strauss Hauer & Feld, LLP,
Washington, DC

For Appellee United States:

John C. Cruden, Assistant Attorney General, John L. Smeltzer, Appellate
Attorney, United States Department of Justice, Washington, DC

For Appellee State of Montana:

Timothy C. Fox, Montana Attorney General, Jeremiah D. Weiner,
Assistant Attorney General, Helena, Montana

---

Submitted on Briefs:  October 21, 2015
Decided:  December 30, 2015

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Objectors to the Crow Water Compact appeal from the Montana Water Court's orders of December 24, 2014, and May 27, 2015, ruling in favor of the settling parties' motion for summary judgment and approving the Water Compact with a final order.

¶2      We affirm the decision of the Water Court.

## ISSUES

¶3      We restate the issues on appeal as follows:

¶4      Issue One:  Did the Water Court apply the proper legal standard of review in approving the Compact in the final order?

¶5      Issue Two:  Did the Objectors meet their burden of proof under the standard of review applied to compacts?

¶6      Issue Three:  Did the Crow Compact negotiation process violate the Objectors' due process rights?

## BACKGROUND

¶7      This case represents the second appeal from the Crow Water Compact, an agreement to distribute and manage water rights among the United States, the Crow Tribe and the State of Montana ("Settling Parties").  The Crow Tribe, the United States through the Department of the Interior, and the Montana Reserved Water Rights Compact Commission agreed to the terms of the Compact in 1999, and the Montana Legislature ratified it the same year.  The Compact is codified at § 85-20-901, MCA.  The Crow Tribe ratified the Compact by vote of its members in 2011.  We recently discussed the facts pertaining to the establishment and history of the Crow Water Compact in a

3

previous appeal, and they will not be repeated here. *In re Crow Water Compact,* 2015 MT 217, 380 Mont. 168, 354 P.3d 1217 ("*Crow I*").

¶8 This appeal arises from the concerns of individual Objectors to the Water Compact. The Objectors in this case are not parties to the Compact, nor do they own land or water rights on the Crow Reservation. Rather, Objectors own land and water rights near the reservation and assert that the Crow Compact will adversely affect their interests.

¶9 In 2012, the Water Court entered a preliminary decree containing the terms of the Compact. After sending notice to over 16,000 persons and entities, the Water Court received approximately 100 objections. Fifteen Objectors remain.

¶10 Pursuant to § 85-2-702(3), MCA, the Compact must be published upon ratification and "must be included in the preliminary decree as provided by 85-2-231, and unless an objection to the Compact is sustained under 85-2-233, the terms of the Compact must be included in the final decree without alteration." The Water Court approved the Crow Water Compact in a final decree on May 27, 2015.

¶11 The purpose of the Compact was to establish the water rights of the Crow Tribe relative to the rights of the state of Montana and the United States. *Crow I,* ¶ 17-18. These water rights are quantified using the Practicably Irrigable Acreage standard (PIA). *See State ex rel. Greely v. Confederated Salish & Kootenai Tribes*, 219 Mont. 76, 92, 712 P.2d 754, 764 (1985); *In re General Adjudication of All Rights to Use Water in the Gila River System and Source,* 201 Ariz. 307, 316-17, 35 P.3d 68, 77-78 (Ariz. 2001). During the Compact negotiations, the Settling Parties differed on the extent of PIA (and thus the

4

amount of water) the Tribe was entitled to under *Winters v. United States*, 207 U.S. 564, 577-78, 28 S. Ct. 207 (1908). The Settling Parties sought to protect their respective interests without obtaining an expensive and time-consuming survey or years of complex litigation.

¶12 The Tribal Water Rights are articulated by basin in Article III of the Compact. First, it was established that the Tribe has a 500,000 acre feet per year (AFY) natural flow right from the Big Horn River Basin. Additionally, the United States conditionally granted the Tribe another 300,000 AFY, divided into two 150,000 AFY components, from its water right in Bighorn Lake. Second, the Compact states that the Tribe has "all surface flow, groundwater and storage" rights in the other basins covered by the Compact. Finally, the Tribe is also required to reserve 250,000 AFY of the Tribal Water Right between the Yellowtail Afterbay Dam and the Two Leggins diversion facility for the benefit of the fisheries and other recreational purposes.

¶13 The Objectors raise the following issues on appeal: First, the Objectors contend that the Water Court did not apply the proper legal standard regarding their obligation to prove injury from the application of the Compact. Second, the Objectors raise several issues concerning the extent of their injury from the operation of the Compact. Third, the Objectors claim that their due process rights were violated during the Compact negotiation process. We have restated the issues for clarity and brevity and collapse all the objections concerning water rights in the Compact under Issue Two. We do not reach whether the Objectors are entitled to attorneys' fees under the Private Attorney General Doctrine because the appeal affirms the Water Court's order.

5

**STANDARD OF REVIEW**

¶14 This Court applies the same standards of review to decisions of the Water Court as it does to decisions of a district court. *Mont. Trout Unlimited v. Beaverhead Water Co.,* 2011 MT 151, ¶ 16, 361 Mont. 77, 255 P.2d 179. This Court reviews the Water Court's findings of fact under the clearly erroneous standard. *Weinheimer Ranch v. Pospisil,* 2013 MT 87, ¶ 19, 369 Mont 419, 299 P.3d 327. This Court reviews the Water Court's conclusions of law de novo to determine whether they are correct. *Skelton Ranch v. Pondera Co. Canal & Res. Co.,* 2014 MT 167, ¶ 26, 375 Mont. 327, 328 P.3d 644.

**DISCUSSION**

¶15 *Issue One: Did the Water Court apply the proper legal standard of review in approving the Compact in the final order?*

¶16 The Objectors maintain that the Water Court committed reversible error in holding that the Objectors must show "material injury" before the Court could rule the decree unreasonable. The Objectors argue that they only need to show "good cause" or that the Compact is not "fundamentally fair, adequate and reasonable and conform[ing] to the law." *Officers for Justice v. Civil Serv. Comm.*, 688 F.2d 615, 625 (9th Cir. 1982).

¶17 The Objectors confuse the standard for filing the initial objection with the standard for ultimately declaring the Compact to be unreasonable. Pursuant to § 85-2-233(1), MCA, Objectors need only show "good cause" to trigger the requirement for the Water Court to hold a hearing on the objection to the Compact. Additionally, under § 85-2-233(4), MCA, "[o]bjections . . . must specify the paragraphs and pages containing the findings and conclusions to which objection is made. The request must state the

6

specific grounds and evidence on which the objections are based." However, "good cause" is not the standard the Water Court should apply in determining the ultimate reasonableness of the Compact itself.

¶18     In *Crow I* we noted the correct standard in reviewing objections to compacts:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice*, 688 F.2d at 625. Furthermore, the Water Court has in previous cases adopted complementary standards in addition to *Officers for Justice* in reviewing water compacts. *In the Matter of the Adjudication of the Existing and Reserved Rights to the use of Water both Surface and Underground, of the Chippewa Cree Tribe of the Rocky Boy's Reservation within the State of Montana*, WC-2000-01, Mem. Op., 2002 ML 4232, at 6 (Mont. Water Ct., June 12, 2002) (hereinafter *Chippewa Cree)*; *In the Matter of the Adjudication of the Existing and Reserved Rights to the use of Water both Surface and Underground, of the Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation within the State of Montana in Basins 40E, 40EJ, 40O, 40Q, 40R & 40S*, WC-1992-01, Mem. Op. at 7 (Mont. Water Ct. August 10, 2001) (hereinafter *Fort Peck*). In cases in which the objector was a non-party to a compact, the Water Court first assesses whether "the decree was the product of good faith, arms-length negotiations," and if so, the "negotiated decree is presumptively valid and the objecting party has a heavy burden of demonstrating that the decree is unreasonable." *United States v. Oregon*, 913 F.2d 576,

7

581 (9th Cir. 1990) (internal citations and quotations omitted). Thus, if the court finds that "the decree was the product of good faith, arms-length negotiations," the burden of proof on the objector changes and it must show that the decree is unreasonable. *Oregon*, 913 F.2d at 581. The Water Court has in previous water compact cases articulated that the "heavy burden" the objector must show is that its interests are "materially injured by operation of the Compact." *Chippewa Cree* at 6; *Fort Peck* at 7. In this case, the Water Court applied the analysis as articulated above; we conclude that there is no error in law in the Water Court's application of this standard.

¶19    *Issue Two: Did the Objectors meet their burden of proof under the standard of review applied to compacts?*

¶20    The Objectors do not challenge that the Compact was negotiated at arm's length and in good faith. Therefore, the Compact is presumptively valid and the Objectors are obliged to show that the Compact is unreasonable and that their interests are materially injured.

¶21    The Objectors raise the following issues concerning the language of the Compact and the allocation of water rights: First, that the Compact failed to conform to applicable law as established by *Winters* and its progeny. Second, that the Compact violates the Objectors' property rights by giving all the water in the smaller drainages to the Tribe and authorizing the Tribe to enter any land for diversion purposes. Third, the Compact is unreasonable because it (i) over-appropriated/failed to quantify water to the Tribe, (ii) the State negotiated the Compact contrary to the public interest, and (iii) the closure of basins injures the Objectors. None of these arguments obviates the need for the Objectors to

8

demonstrate that the Compact materially injures their interests. *Officers for Justice*, 688 F.2d at 625; *Oregon*, 913 F.2d at 581; *Chippewa Cree* at 6*; Fort Peck* at 7.

¶22 "The objective of the Compact, which is a negotiated settlement, is to define the Tribe's *Winters* rights, eliminate litigation risk and expense, and achieve finality for the Tribe and other parties to the agreement." *Crow I*, ¶ 38. If the courts were to reexamine every issue in consent decrees and settlements with the minutia that the Objectors request in relation to the Tribe's *Winters* rights, it would defeat the purpose of compacts.

¶23 It is important to note that under the terms of the Compact itself, no user of the Tribal Water Right as defined therein can assert senior priority against any state-law water user with a pre-1999 right, the year that the Compact was ratified and adopted by the Montana Legislature. *See* § 85-20-901, MCA, Art. III, Sec. A.6.a; *see also* Art. III, Secs. B.6.a, C.6.a, E.6.a, F.6.a. The Tribal Water Right cannot be exercised ahead of pre-1999 state-law rights. Thus the amount of water available to pre-1999 state law rights is protected and certainly not materially injured by the Compact.

¶24 The approach the Compact applies to quantification and allocation of water rights does not render the Compact unreasonable. The Objectors invite the Court to reconsider the allocation of water as a departure from controlling law. Specifically, they desire the Court to make a determination regarding the Tribe's water rights under *Winters*. At trial, the Objectors introduced expert testimony that the Tribe had been allocated more water than it was entitled to under its *Winters* rights. Objectors' expert testimony suggested that the Tribe was over-allocated water based on (1) 300,000 AFY storage right in Big Horn Lake, (2) that the Tribal Water Right should be discounted because of the land

9

status within the reservation, and (3) return flow from Tribal diversions should count against the total AFY the Tribe received.

¶25 We cannot conclude that the Water Court was clearly erroneous in adopting the compromise reached by the Settling Parties. The storage right in Big Horn Lake was a grant from the Federal Government subject to limitations in the Streamflow and Lake Level Management Plan. Section 85-20-901, MCA, Art III, Sec. A.6.a.7. The Objectors do not show how this grant from the federal government is beyond the legal authority of the U.S. The status of land within the reservation is uncertain and the Objectors' hydrological expert admitted as much at trial. Thus, it is difficult to support that objection with anything other than speculation. And, substantial evidence exists to demonstrate that return flow from Tribal diversions does not reduce the amount of water available downstream.[1] The potential of the Tribe not using all the water it was allocated is also speculative and not indicia of over-allocation, especially if the Objectors have sufficient water for their own diversions. As the court articulated in *Officers for Justice*, it is not appropriate for the Court "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625.

---

[1] *See Reserved Water Rights Compact Commission*, *Staff Report,* 22 (2010).

¶26    Additionally, the Objectors challenge the legality of the allocation of water on the Ceded Strip.[2]  They claim that the 47,000 AFY allocated to the Tribe was an arbitrary number that was allocated for an improper purpose and that in times of shortage it may affect the water rights of some of the Objectors.

¶27    However, under *Winters* and its progeny the tribe has a right to water for development of industrial interests.  *Winters*, 207 U.S. at 564. 28 S. Ct. at 207; *Greely*, 219 Mont. at 93, 712 P.2d at 765.  The Tribe's interests in the Ceded Strip are primarily mineral deposits (coal) that may be developed for industrial purposes.  The allocation of water in the Ceded Strip reflects the opportunity to do that for the Tribe.  As with the other Compact provisions, the Tribal allocation of water on the Ceded Strip was a result of arms-length negotiations between the Settling Parties, and the Tribal water rights in the Ceded Strip are limited by the Compact.

¶28    The Compact provides for the protection of state water rights and limitations of the amount of water that may be diverted from either the Bighorn River Basin or the Yellowstone River drainages.  See § 85-20-901, MCA, Art. III, Secs. F.6, F.1.a.(1).  Given these protections in the Compact and the calculation of the water right based on the development of mineral deposits we cannot conclude that the Water Court was clearly erroneous in adopting the Compact allocation of water for the Ceded Strip.

¶29    The Compact does not compromise state-based water rights.  The Objectors argue that the Compact extinguishes the state-based water rights in all the drainages other than

---

[2] For a description of the Ceded Strip, *see Department of Revenue v. Bird*, 252 Mont. 438, 440, 829 P.2d 941, 942 (1992).

the Big Horn and Yellowstone.  The Objectors cite Article III Sections B, C, D, and E of the Compact, which state that "the Tribe has a water right for all surface water, ground water and storage within" those basins.  However, the Compact also states in the same sections that water rights recognized under state law with priority dates before June 1999 are protected from assertions "of senior priority in the exercise of current uses of the Tribal Water Right."  The Compact also clarifies that any new development of the Tribal Water Right shall be junior to state-based water right holders.  Effectively, any new development from June 1999 will be junior to the Objectors' rights.  *See* § 85-20-901, MCA, Art. III, Secs. B.6, C.6, D.6, E.6.

¶30     The Objectors misunderstand how the Compact allocated water rights to the Tribe relative to state-based rights in these basins.  Although the Compact grants all the water in these basins to the Tribe, it is subject to a significant caveat designed to protect existing state-based rights.  The Compact also grants a degree of protection to state-based rights that are junior to the Tribal water rights.  Section 85-20-901, MCA, Art. III, Secs. B.6, C.6, D.6, E.6.  Therefore, under the plain language of the Compact, state-based rights are not nullified; in fact, they are given a degree of protection that would otherwise not be available absent the Compact.  It is not unreasonable to quantify the Tribe's rights in these basins by the entirety of the water available if state-based rights are not affected.  The Objectors have failed to meet their burden to prove the Compact materially injures them with respect to the integrity of state rights under the Compact.

¶31     The lack of tribal institutions for the administration of water rights does not constitute material injury to the Objectors.  The Objectors raise arguments regarding the

distribution and administration of the water rights in times of shortage. The Objectors reference the lack of Tribal administration in situations in which shortage of water may require judicial involvement. The Objectors contend that the nonexistence of these administrative institutions materially injures their interests. However, as we held in the previous Crow Compact appeal, the Water Court's review of the Compact is limited to Article III. Section 85-20-901, MCA, Art. VII, Sec. B; *Crow I*, ¶ 8. Thus, our review of the Water Court's assessment is limited as well. Still, the Objectors are mistaken in their argument that the Compact removes enforcement of state-based rights from state agencies and courts. Article IV of the Compact plainly states that the Tribal water right is administered by the Tribe (or the Bureau of Indian Affairs in the absence of appropriate Tribal institutions). Section 85-20-901, MCA, Art. IV, Sec. A.2.a. Conversely, "the Tribe *shall not administer any water right recognized under state law.*" Section 85-20-901, MCA, Art. IV, Sec. A.2.c (emphasis added). The Compact protects state-based rights. Section 85-20-901, MCA, Art. III, Secs. B.6, C.6, D.6, E.6. The Compact may not authorize the Tribe to take water from the Objectors. And in times of shortage, the Objectors may enforce their rights under state law with state agencies and in state court. Section 85-20-901, MCA, Art. IV, Sec. A.2.c. The Compact explicitly offsets the potential for injury to state-based water right holders. Consequently, the Objectors have failed to meet their burden to prove the Compact materially injures them with respect to the administrative provisions in the Compact.

¶32 The Compact does not permit the unconditional entry of the Tribe onto private land. The Objectors argue that the Compact injures their interest because it includes

language that allows the Tribe to "divert or permit the diversion of the Tribal water right from any place and by any means for use in connection with the Tribal interests." Section 85-20-901, MCA, Art. III, Secs. A.4, B.4, C.4, D.4, E.4, F.4. They argue that this language will permit the Tribe to enter the private land of the Objectors and divert water from it for the Tribe's benefit.

¶33 However, a diversion is a change in use of water. Section 85-2-402, MCA. Thus, under Article IV of the Compact, which establishes the proper judicial channels for changes in use, the Tribe may not enter private fee land without the owners' permission or the appropriate legal authority otherwise acquired from a state agency or court. Furthermore, the Compact expressly prohibits an interpretation of the text that would "impair, amend, or alter rights under existing state or federal law." Section 85-20-901, MCA, Art. V, Sec. B.11. The Objectors have rights existing under state law and the Tribe may not invoke the Compact to grant them authority to impair, amend, or alter the rights existing under state law. In fact, these principles are clearly reflected in the Compact Commission Staff Report which says, "the tribe can divert water from any point . . . *where it owns land or has the permission of the landowner to divert.*" *Reserved Water Rights Compact Commission*, 83, 94, 96, 97, 100, 103 (emphasis added). The Objectors have failed to meet their burden to prove the Compact materially injures them with respect to entering private land.

¶34 The closure of several basins does not compromise Objectors' rights. Objectors submit that they have suffered injury due to the closure of the basins. The Objectors argue that the Compact would freeze these basins in time, effectively disallowing

14

"progress based on technology, improved practices, changes in irrigation and livestock methods and methodology." The Objectors speculate that the Tribe would object to change in use of a state water right since the Tribe was granted all the unappropriated waters in these basins.

¶35 However, the Water Court correctly explained that the Objectors do not have a property interest in future appropriations or changes in use. *Seven Up Pete Ventures v. State*, 2005 MT 146, ¶ 26, 327 Mont. 306, 114 P.3d 1009. Furthermore, the Compact authorizes changes of use or the transfer of state water rights provided that the change or transfer does not adversely affect an existing use of a Tribal water right. Section 85-20-901, MCA, Art. IV Sec. D.2. Nevertheless, the Objectors' main contention here is the future potential problems that might arise with the administration of water rights under the Compact. Not only is it speculative but it is also beyond the scope of our review. The Objectors have failed to meet their burden to prove the Compact materially injures them with respect to closure of the smaller basins.

¶36 The Objectors argue that the State negotiated contrary to public interest. The Objectors also claim that the Compact is overreaching because the Tribe was given 250,000 extra AFY for the maintenance of the Blue Ribbon Fishery. The Objectors suggest that the Montana Constitution declares that the water is for the benefit of the people (in this case for private appropriation) and reserving that water for the maintenance of the fishery is inappropriate. However, this argument does not stand up to scrutiny. Allocation of water for public recreation and maintenance of aquatic life is not inconsistent with the public interest. Pursuant to the Montana Constitution, "waters

15

within the boundaries of the state [are] the property of the state for the use of its people."
Mont. Const. art. IX, § 3(3). The Compact has been ratified by the Legislature and it is squarely within the authority of the Legislature to reserve water for public and recreational use. Reserving water for "public recreational purposes and for the conservation of wildlife and aquatic life" is for the benefit of the public. Sections 85-1-101(5), 85-2-102, MCA; *Mont. Trout Unlimited v. Beaverhead Water Co.*, 2011 MT 151, ¶ 30, 361 Mont. 77, 255 P.3d 179. Allocating water for the maintenance of aquatic life does not constitute an "extra" allocation to the Tribe nor does it make the Compact overreaching. Thus, the Objectors have failed to meet their burden to prove the Compact materially injures them with respect to the maintenance of the fishery.

¶37 Under the circumstances as presented in this case, the Crow Water Compact is presumed valid and the Objectors carry a heavy burden of proof. The Objectors fail to meet their burden of showing that the Compact was unreasonable and materially injures their interest. We cannot conclude that the Water Court committed clear error in its final order.

¶38 *Issue Three: Did the Crow Compact negotiation process violate the Objectors' due process rights?*

¶39 The Objectors submit that the Compact approval process violated their due process rights under the Montana Constitution. Mont. Const. art. II, § 17. They further claim they did not have a meaningful opportunity to be heard and cite *Crismore v. Montana Board of Outfitters*. "Procedural due process requires both notice of a proposed action and some form of hearing that provides a meaningful and timely opportunity to be

16

heard before property is taken." 2005 MT 109, ¶ 15, 327 Mont. 71, 111 P.3d 681. However, the record shows that the negotiation sessions were open to the public, noticed drafts were made public for their review in advance, and the Montana Legislature solicited public comments and held public meetings. Therefore the Compact did not violate the Objectors' due process rights because Objectors had opportunities to be heard and to comment on the Compact.

**CONCLUSION**

¶40 The Water Court's final order is affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE