Justice Jim Rice delivered the Opinion of the Court.
***435 ¶1 Claimant City of Fort Peck (Fort Peck) appeals the order entered by the Montana Water Court determining the volume of water to which Fort Peck is entitled pursuant to its Claim 40E 182897-00 in Missouri River Basin (Basin 40E), between the Musselshell River and Fort Peck Dam. We affirm and address the following issue:
Did the Water Court err by entering conclusions in contradiction to the pretrial *830 order and violate Fort Peck's due process rights?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 Water Claim 40E 182897-00[1] is a municipal water right claimed by Fort Peck, which lies on the northeast end of Fort Peck Reservoir, southeast of Glasgow, and has a present population of 251 people. Fort Peck came into existence in 1934, during construction of the Fort Peck Dam, when the town was built to house workers on the dam project. Fort Peck and the surrounding area then reached a population of over 10,000 people, and local amenities included a hotel, theatre, hospital, school, stores, dormitories, bunkhouses, as well as homes. Fort Peck's population dropped dramatically after the dam was completed, and the town no longer boasts a school, hospital or grocery store. Although evidence varied, it appears Fort Peck's population has also suffered a gradual decline since 1990. The town's hotel and theatre continue to open seasonally.
¶3 Fort Peck originally claimed a volume of 1,500 acre-feet per year (AFY) based upon an assumed continuous, year-round diversion of 930 gallons per minute. During the claim examination process, the Department of Natural Resources and Conservation (DNRC) added an issue remark to the claim questioning the claimed volume. The Water Court ordered Fort Peck to meet with the DNRC to attempt resolution of the issue remark, and ordered the DNRC to file a memorandum with its recommendations for resolution. The parties were unable to resolve the remark, and the DNRC filed a recommendation that the volume on the claim be set at 206 AFY, based upon available evidence. The Water ***436 Court joined the State of Montana pursuant to § 85-2-248(7)(a), MCA.[2] In its order joining the State, the Water Court stated that "[t]he prima facie status of Fort Peck's claimed volume has been overcome by evidence showing it has not used that volume for the last twenty-five years and has no plan to do so in the future," but reserved for trial a ruling on the presumption of nonabandonment for municipal water rights claims under § 85-2-227(4), MCA. At the request of the parties, the Water Court stayed the case pending a decision by this Court in City of Helena v. Cmty. of Rimini , 2017 MT 145, 388 Mont. 1, 397 P.3d 1, in which § 85-2-227(4), MCA, was at issue. After issuance of this Court's decision in City of Helena , the case proceeded on hearing track, W. R. Adj. R. 16(c), and the parties engaged in discovery.
¶4 The parties submitted a proposed joint pretrial order on June 29, 2018. Pertaining to the arguments here, the parties agreed to the following within the proposed order, including a reduction of Fort Peck's claim to 773 AFY:
AGREED FACTS
...
4. Fort Peck has historically beneficially used 223 AFY ... which includes 17 AFY for backwash of its water treatment plant.
5. The capacity of Fort Peck's water treatment and distribution system is 1500 AFY.
CONTENTIONS
1. Fort Peck is entitled to a decreed volume ... that reflects its actual historical beneficial use of water plus a volume for future use commensurate with its reasonably anticipated future needs.
Fort Peck further contends:
2. Fort Peck is entitled to a 773 AFY volume to meet its actual historical beneficial use of water and its reasonably anticipated future needs.
The State further contends:
*831 3. Fort Peck has abandoned the portion of [its] Statement of Claim ... that exceeds the amount of its actual historical beneficial use of water plus reasonably anticipated future needs.
...
ISSUES OF LAW
1. Has the State met its burden of overcoming the presumption of ***437 nonabandonment pursuant to § 85-2-227(4), MCA, for any portion of Statement of Claim 40E 182897-00?
...
4. Has Fort Peck abandoned any portion of Statement of Claim 40E 182897-00?
The parties agreed that Fort Peck had satisfied two of the criteria in § 85-2-227(4), MCA, necessary to confer a presumption of nonabandonment of the entirety of Fort Peck's claim of 1,500 AFY, requiring the State to rebut the presumption in order to prove abandonment by Fort Peck of "any portion" of its claim.
¶5 The Water Court adopted the parties' proposed pretrial order, and in its adoption order provided the following explanation of the case for trial: "The City of Fort Peck claims that the correct volume for its right is 773 AFY. The State of Montana agrees it has the burden of proof to show that the City of Fort Peck's volume is something other than the 1,500 AFY claimed on the Statement of Claim."
¶6 The case proceeded to trial before the Water Court in July 2018, and the Court entered its Order Regarding Volume and Order Closing Case in October 2018. The Court therein summarized the parties' trial positions as follows:
Prior to trial, the parties filed a joint pretrial order. Although the parties disagree on the volume Fort Peck should receive, they agree Fort Peck is entitled to receive a volume equal to historical beneficial use plus reasonably anticipated future needs. In Fort Peck's view, 773 acre-feet per year fairly encompasses historical beneficial use plus reasonably anticipated future needs. In the State's view, the amount is 206 AFY or less.
¶7 The Court concluded that Fort Peck qualified for the presumption of nonabandonment, that the presumption was overcome by the State, and that Fort Peck was entitled to a volume of 171 AFY "for current use and reasonably foreseeable future use."[3]
¶8 Fort Peck appeals.
***438 STANDARD OF REVIEW
¶9 We apply the same standards of review to decisions of the Water Court as we do the district court. In re Crow Water Compact , 2015 MT 353, ¶ 14, 382 Mont. 46, 364 P.3d 584. We review the Water Court's findings of fact to determine whether they are clearly erroneous, and we review the Water Court's "conclusions of law de novo to determine whether they are correct." In re Crow Water Compact , ¶ 14.
DISCUSSION
¶10 Did the Water Court err by entering conclusions in contradiction to the pretrial order and violate Fort Peck's due process rights?
¶11 Fort Peck argues the Water Court erroneously contradicted the pretrial order without a valid basis to do so under M. R. Civ. P. 16. It emphasizes the parties' joint contention that Fort Peck was entitled to a volume reflecting its actual historical beneficial use plus a volume for reasonably anticipated future needs, the agreed fact that Fort Peck's historical beneficial use was 223 AFY, and the State's contention that Fort Peck had abandoned the portion of its claim that exceeded its historical beneficial use and anticipated future needs. Fort Peck offers, "[s]tated differently, the only issue at trial was how much additional water, over and above the 223 AFY volume, as agreed by the *832 parties, is necessary for Fort Peck's reasonably anticipated future needs." Fort Peck argues the Water Court also erred by basing the volume determination of 171 AFY on the town's current use, instead of actual historical use, in addition to its anticipated future use, as stated in the pretrial order. As relief, Fort Peck asks that we simply order the volume of its claim to be 223 AFY based upon the measure of the town's historical use, and call it a day. Fort Peck's argument is well-articulated, but there are additional governing principles at work here that persuade us to reject it.
¶12 Under M. R. Civ. P. 16(d), the pretrial order "controls the course of the action unless the court modifies it."[4] See also Byrum v. Andren , 2007 MT 107, ¶ 39, 337 Mont. 167, 159 P.3d 1062 ("the pretrial order controls the subsequent course of the action."). Under Rule 16(e), the court "may modify the order issued after a final pretrial conference only to prevent manifest injustice." Consequently, "parties may not assert issues or other matters which were not included in the ***439 pretrial order." Travelers Indem. Co. v. Andersen , 1999 MT 201, ¶ 34, 295 Mont. 438, 983 P.2d 999. "The purpose of pretrial orders is to simplify issues, prevent surprise and allow counsel to prepare their cases for trial based on the pretrial order. A legal theory or factual issue for trial must be at least implicitly included in the pretrial order[.]" Weimar v. Lyons , 2007 MT 182, ¶ 20, 338 Mont. 242, 164 P.3d 922 (internal quotations and citations omitted). However, we have also held that "a district court possesses wide discretion in deciding whether to allow a party to raise a factual issue or legal theory not explicitly raised in the pretrial order, but the court must be mindful not to prejudice the parties[,]" Byrum , ¶ 39, and that "pretrial orders should be liberally construed to permit any issues at trial that are embraced within [their] language." Weimer , ¶ 20; see also M. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.... failure to amend does not affect the result of the trial of that issue."); Nw. Union Tr. Co. v. Worm , 204 Mont. 184, 189-90, 663 P.2d 325, 327-28 (1983) (stating under M. R. Civ. P. 15(b) that failure to raise an issue in the pretrial order will not preclude parties from raising it at trial where the issue is implicit); Pub. Serv. Co. v. Bd. of Water Works , 831 P.2d 470, 481-82 (Colo. 1992) (holding the Water Court did not err in granting a dismissal based on an issue that the pretrial order did not specify for determination at trial, where that issue was "within the scope of issues set forth in the pretrial order" and the issues set for trial clearly encompassed that issue).
¶13 In addition to the parts of the pretrial order emphasized by Fort Peck, there were also statements implicating a broader inquiry for trial. The stated issues of law included whether the State "met its burden of overcoming the presumption of nonabandonment pursuant to § 85-2-227(4), MCA, for any portion of" Fort Peck's claim, and, correspondingly, whether Fort Peck had "abandoned any portion of" its claim (emphasis added). Although Fort Peck may well have read these phrases as limited to the portion of its claim in excess of a baseline consisting of its historical and future uses, given the joint contention, the Water Court read the pretrial order more broadly. In its order adopting the pretrial order, the Water Court clarified that Fort Peck was claiming that "the correct volume for its right is 773 AFY," while the State had the burden to prove the volume was "something other than the 1,500 AFY claimed on the Statement of Claim." (Emphasis added). Thus, in setting "the subsequent course of the action," Byrum , ¶ 39, the Water Court clearly provided notice to the parties of a broader inquiry. Neither party raised concerns with the Water Court's ***440 order. In its final order, while issued after trial, the Water Court reaffirmed this view of the proceeding, explaining the parties' trial positions as follows: "In Fort Peck's view, 773 acre-feet per year fairly encompasses historical beneficial use plus reasonably anticipated *833 future needs. In the State's view, the amount is 206 AFY or less ." (Emphasis added).[5]
¶14 Importantly, § 85-2-227, MCA, the statute establishing presumptive nonabandonment of municipality water rights, which is at the core of this case, provides that "a water judge may determine all or part of an existing water right to be abandoned based on a consideration of all admissible evidence that is relevant, including, without limitation, evidence relating to acts or intent occurring in whole or in part after July 1, 1973." Section 85-2-227(3), MCA.[6] This statute provides for a broader consideration in presumptive nonabandonment cases, gives notice of the contours of the issue before the Water Court, and is consistent with the interconnected nature of water rights on a common source and the general need to preserve the resource. Fundamentally, the Water Court cannot grant a volume that is greater than the beneficial use established by the evidence, McDonald v. State , 220 Mont. 519, 534-35, 722 P.2d 598, 608 (1986), subject to, of course, in cases such as this, application of the presumption of nonabandonment provided to municipalities under the statute. See § 85-2-227(3) - (4), MCA.
¶15 This discussion also illustrates the flaw in Fort Peck's argument that the Water Court erred in considering the town's current use despite the pretrial order's reliance on historical use. The statute uniquely requires the abandonment inquiry to include, "without limitation," consideration of uses that occurred after July 1, 1973, and ***441 necessarily requires consideration of current as well as future uses. As the Water Court explained:
Ordinarily, a water user faced with a long history of nonuse of part of its right would be faced with rebutting a presumption of abandonment. The statute changes the starting position of a municipal claimant that has not used its water right for a prolonged period. A municipality meeting the statute's criteria is entitled to a presumption of nonabandonment.... Abandonment can still be proven if a preponderance of evidence shows that the amount of water claimed is more than the amount needed to satisfy the current use plus normal increases in population over a reasonable period.... [T]he growing cities doctrine embodied in § 85-2-227(4), MCA was intended to allow towns like Fort Peck to protect existing uses plus a reasonable amount of water for foreseeable needs....
See also City of Helena , ¶ 37 (purpose of the Growing Cities Doctrine is to allow municipalities " 'to obtain appropriations of water that will satisfy the needs resulting from a normal increase in population within a reasonable period of time.' ") (quoting Denver v. Sheriff , 105 Colo. 193, 96 P.2d 836, 841 (1939) ). Thus, as the State correctly argues, the statute does not "make historical beneficial use the touchstone for municipalities," and historical use, standing alone, "does not insulate a claim from a finding of total or partial abandonment." As the Water Court noted, this will be advantageous to the typical, growing, municipal claimant, whose claim would not be limited to demonstrable historical use. The difficulty presented for Fort Peck is that its population has been declining and its water use has been declining from historical levels.
¶16 The Water Court held that Fort Peck qualified for the presumption of nonabandonment of its claim under § 85-2-227(4), MCA, by satisfying the statutory criteria, including obtaining a filtration waiver under the federal Safe Drinking Water Act, 42 U.S.C. 300(f), et seq. However, upon the State's evidentiary *834 showing, the Water Court held that the statutory presumption of nonabandonment of some portion of Fort Peck's claim had been overcome. In determining the correct volume for the claim, the Water Court noted that the town's population had not increased since the filing of its water reservation application in 1991, and that the population of the surrounding areas, including the City of Glasgow, has also been in decline. The town's expert forecasted a population growth rate increase of 1.07% per year beginning in 2020, which would result in a population of 382 by 2055, but the Water Court found "no credible data indicating when the town's future population will exceed 1,200 people, if ever," which is the ***442 population that could live in a "full build-out of the town," including vacant platted lots and currently undeveloped space, predicating the town's claim to future needs of 550 AFY.[7] The Water Court found the claim for future use was not credible, and that the town had never used more than one-third of its water treatment plant's capacity. Premised upon evidence it found to be credible of a growth in population to 384 people in forty years, and applying average per capital consumption rates, the Court determined that the claim required a volume of 154 AFY, plus 17 AFY for back-flushing filters of the treatment plant, for a total of 171 AFY.
¶17 Fort Peck also argues that its due process rights were violated because it was not provided notice or an opportunity to present evidence concerning current use or abandonment of historical volume. Procedural due process requires both notice and the "opportunity for a hearing appropriate to the nature of the case." Eldorado Coop Canal Co. v. Hoge , 2016 MT 145, ¶ 32, 383 Mont. 523, 373 P.3d 836. "These requirements are flexible and are adapted by the courts to meet the procedural protections demanded by the specific situation." Eldorado Coop Canal Co. , ¶ 32 (internal citations omitted). As discussed above, notice of the issue before the Water Court was provided throughout the proceeding, and as a matter of governing law. Fort Peck was able to participate in every step of the process that resulted in the Water Court's order, including presenting testimony, exhibits, and objecting at trial. Moreover, the record reflects that several exhibits introduced at trial, which both parties stipulated to, demonstrated Fort Peck's current use of water. In addition, three witnesses were questioned about Fort Peck's current use during the trial. Thus, Fort Peck had both notice that their current use might be considered, and the opportunity to present evidence of their use and nonabandonment. We conclude that Fort Peck had adequate notice and an opportunity to be heard before the Water Court entered its final order, both for purposes of the pretrial order and for due process, and that the Water Court's conclusions were correct.
¶18 Affirmed.
We concur:
MIKE McGRATH, C.J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
JAMES JEREMIAH SHEA, J.

This case also included claim 40E 165372-00 by the United States of America (Army Corps of Engineers), filed for a municipal right for the same 1500 AFY volume and the same November 23, 1934 priority date. On January 7, 2016, the Water Court consolidated claims 40E 182897-00 and 40E 165372-00. During case proceedings, the United States withdrew claim 40E 165372-00 as a duplicate of claim 40E 182897-00.

"If an unresolved issue remark involves nonperfection or abandonment, the water court shall join the state of Montana through the attorney general as a necessary party to resolve the issue remark." Section 85-2-248(7)(a), MCA.

Unrelated to the claim issues on appeal here, in 1991 Fort Peck filed an application for a water reservation, available to political subdivisions to reserve water for future uses, for which an additional 100 AFY was made available to Fort Peck. See § 85-2-316, MCA ; Admin. R. M. 36.16.101, et seq. While noting that the validity of Fort Peck's reservation was not at issue in this proceeding, the Water Court stated in its final order that the reservation "provides an additional cushion in case future growth" of the town exceeds that which the Court found from the evidence.

Unless the context requires otherwise, the Montana Rules of Civil Procedure govern practice in the Water Court. W. R. Adj. R. 2(b).

The State referenced the specific volume of 206 AFY at several points in the proceeding, which was also the volume recommended by the DNRC and the town's largest historical beneficial use. This amount, when added to the 17 AFY for back-flushing the town's water treatment plant, made up 223 AFY. Although not specifically stated in the pretrial order, the State, during the proceeding, argued that 206 AFY should be "the largest amount of water," and that there was evidence "that would justify and warrant a finding below that figure."

As the State notes, this claim presented a unique scenario because Fort Peck was formerly owned by the Army Corp of Engineers, and there are no records reflecting pre-1973 use for purposes of assessing "existing water rights" defined in § 85-2-102(12), MCA, as rights existing prior to July 1, 1973. Therefore, the parties agreed to treat Fort Peck's 1990 use data as its historical beneficial use because it was the highest volume reflected by the available records.

Added to its historical use of 223 AFY, this alleged future use brought the town's claim to a total volume of 773 AFY.